Triple-State Natural Gas & Oil Company v. Wellman.

CASE 11—ACTION BY J. F. WELLMAN AGAINST THE TRIPLE-STATE NAT-
URAL GAS & OIL COMPANY, FOR PERSONAL INJURIES—OCTOBER 29.

# Triple-State Natural Gas & Oil Company v. Wellman.

APPEAL FROM LAWRENCE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

NEGLIGENCE—EXPLOSION OF NATURAL GAS—COMPANY NOT INSURER OF
ITS SAFETY.

Held:   1.  A company supplying natural gas to consumers is not
an insurer of the safety of its product, so as to be responsi-
ble for a failure to keep it confined, where such failure is
caused by the negligence of the person to whom the gas was
furnished; but is only liable for a failure to exercise ordinary
care.

2. Defendant company furnished natural gas to a mill, the pipes be-
ing so arranged that the gas passed through a "regulator,"
which reduced the pressure before the gas reached the meter.
There was, however, a "by-pass," by which the gas could be
turned into the meter at the full pressure of the main.    Both
the cock to turn the gas through the "regulator" and that to
turn it through the "by-pass" were under the control of the
mill owner.    While plaintiff was leaving the mill after hav-
ing been there to seek work, the owner of the mill, in turning
on the gas, accidentally turned the cock admitting the full
pressure, and the meter exploded, injuring plaintiff.    HELD,
that the only negligence was that of the mill owner, so that
defendant was not liable for plaintiff's injuries.

JOSEPH P. O'BRIEN AND HAGER & STEWART, FOR APPELLANT.

J. F. Wellman, a married man, though an infant, who sues
by his father and next friend, brought suit in which he claim-
ed and recovered $2,000 damages for personal injuries sus-
tained by him, caused by an explosion of the gas company's
meter at the mill of L. D. Boggs, at Louisa, Ky., alleged to
have been the result of negligence upon the part of the gas
company.

On January 8, 1900, Wellman, without any business and with-
out invitation, went upon the property where Boggs was at

work, and while there, by some carelessness on the part of
Boggs or some one else in turning the wrong cock attached
to the machinery, an explosion followed and Wellman was
injured, and so it follows:

First. Either Boggs negligently turned the wrong cock al-
lowing the gas to go through the by-pass with full force into
the meter, or,

Second. It was turned by some third party not an agent
or employe of the gas company, but a mere meddler and that
the injury is attributable solely to one of these two causes.

We submit that whether turned by Boggs or a meddler, the
injury resulting from the accident is in no way attributable to
any negligence on the part of the gas company, and said company
is in no way liable therefor.

Analyzing the allegations of the petition the negligent acts
charged are:

1. The carelessness and negligence of the defendant in op-
erating its pipe line and meter.

2. In carelessly and negligently failing to provide necessary
valves and means to control the pressure of the gas in its
pipes and meter.

3. In carelessly and negligently sending gas through its pipes
and meter at much higher pressure and with much greater
force than the valves, pipes and meter provided therefor would
bear.

4. Carelessly and negligently sending through its pipes and
meter a greater volume of gas than the means it had provid-
ed to control the pressure and action of gas would bear.

All of which by subsequent allegations in the petition, if
strictly construed, is narrowed down and confined exclusively,
to-wit:

5. By reason of the carelessness and negligence of the de-
fendant, its agent and servants so operating its pipe line and
furnishing gas to the mill as aforesaid, the explosion was
caused and plaintiff injured as before described and not oth-
erwise.

Now we submit that there is no allegation in the petition
basing negligence upon any defect in the construction or the
material of the regulator or the meter, nor that they or any
of them were not properly boxed or protected from meddlers,
or that there was no gauge upon the regulator, and all the
evidence upon these matters was incompetent and irrelevant
and prejudicial to appellant. The accident was clearly caused
by the gas going around the regulator through the by-pass and
into the meter, and it is wholly immaterial what the condition

of the regulator was, as its condition neither contributed to nor would have prevented the accident. Hence, evidence as to a gauge upon the regulator was wholly immaterial and irrelevant.

We earnestly contend that the court erred in failing to peremptorily instruct the jury to find for the defendant on the ground that there was absolutely no evidence going to show that the defendant had been guilty of any negligence in any particular in any matter complained of in the petition.

We also insist that the court erred in its instructions to the jury, in failing to instruct as to the measure of damages, although asked so to do; no question was directed as to the probable permanency of the injury sustained. The whole matter was left to the jury for its speculation, and as a result, damages were awarded in the total sum claimed. The instructions were otherwise objectionable as will be readily seen by the court.

THEOBALD & THEOBALD, ATTORNEYS FOR APPELLEE.

The appellant was in the business of furnishing natural gas to persons along its line for fuel and light, and to Mr. Boggs for use in his mill. The regulator and meter were the property of appellant and were left in the custody of Boggs and he was directed to use them. They were necessary to the proper and careful operation of the line and required persons skilled in the business to look after them. The meter was to measure the quantity of gas used and the regulator and bypass to control the pressure. Boggs, an unskillful man, was placed in charge of these machines to operate them.

We contend that the cause of the explosion was that more gas was turned into the meter than it would bear and that this was done by Boggs who was appellant's agent, and the negligence of Boggs was the negligence of the appellant for whom he was acting. It was the duty of appellant to see that the pipe valves, meters and regulators were in order and protected. This it failed to do.

It can not be claimed that the verdict in this case is excessive, with the evidence showing the young man's suffering, his long confinement in bed and on crutches, and the permanent impairment of his leg, some parts of the bone being entirely gone.

We submit that there is no substantial error in the instructions, and the appellant can not complain of the failure of the court to instruct upon a particular point unless the instruction was asked for on such point.

Triple-State Natural Gas & Oil Company v. Wellman.

The instructions only directed the jury to find compensatory damages and it is clear that the damages given by the jury will not compensate him for the injury inflicted. We submit that under the pleadings any evidence was competent and relevant that would in any way show negligence or carelessness upon the part of appellant, its agents and servants operating its pipe line, meter, regulator and by-pass in Boggs' mill. Negligence is pleaded generally and the answer denies that appellee was injured by *any acts* of negligence of appellant, its agents or servants. We ask that the judgment be affirmed with damages.

### AUTHORITIES CITED.

Louisville Gas Co. v. Gutenkuntz, 82 Ky., 432; Thomas' Admr. v. Maysville Gas Co., S. W. Rep., vol. 56, p. 153; C. & N. R. R. Co. v. Brown, 12 Rep., 468; Maysville & Lexington R. R. Co. v. Herrick, 13 Bush, 122; Heflin v. Auxier, 9 Rep., 535; E. & B. S. R. R. Co. v. Messer, 11 Rep., 486; Adams Express Co. v. Singleton, 7 Rep., 296; Newport Street Railway Co. v. Johnson, 2 Rep., 225; L. N. A. & C. R. R. Co. v. Davidson, 12 Rep., 142; L. & N. R. R. Co. v. Bullins, 15 Rep., 752; Ky. Central R. R. Co. v. Ackly, 87 Ky., 278; L. & N. R. R. Co. v. Howard, 82 Ky., 212; Tubb v. Cincinnati R. R. Co., 7 Rep., 528; Eskridge v. C. N. O. & T. P. R. R. Co., 89 Ky., 367; Fugate v. City of Somerset, 16 Re., 807; L. & N. R. R. Co. v. Wolf, 80 Ky., 82; C. N. O. & T. P. R. R. Co. v. Pemberton, 7 Rep., 676, 8 Rep., 169; L. & N. R. R. Co. v. Rains, 15 Rep., 423; C. & O. Ry. Co. v. Davis, by next friend, 22 Rep., 1156.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant is engaged in the business of supplying natural gas to Ashland, Ky., Huntington, W. Va., Ironton, Ohio, and other cities in that vicinity. Its wells are in Martin county, Ky., and it has a pipe line which passes through Louisa, Ky. At Louisa it furnished the gas to the sawmill of L. D. Boggs. There was a pipe running from the main to the mill, and just inside of the mill was a meter. Between the meter and the faucet to be used in turning on the gas for the mill was a regulator, which reduced the pressure so that the gas did not pass into the meter with

the full pressure that was on the main. Appellee, Wellman, had gone to the mill seeking work of Boggs. Just as Wellman was leaving the mill, Boggs went to turn on the gas. By oversight he turned the wrong cock, turning what was known as the "by pass," which turned upon the meter the full pressure of the main, which was 120 pounds. The meter exploded, and a piece of the meter struck Wellman on the leg, breaking it, and causing him other painful injuries, for which he sued, and recovered judgment against the gas company for $2,000. The testimony on the trial took a wide range, but, without going into it minutely, we are satisfied it shows no negligence on the part of the company, unless it is responsible for the negligence of Boggs, or was an insurer of its gas, and is responsible, at all events, if it failed to keep it confined. Counsel for the appellee, realizing this, has rested his case on these two grounds, and we deem it unnecessary to extend the opinion by noticing other points on which evidence was introduced.

We do not think there is a reasonable doubt that the sole cause of the accident was Boggs' turning the wrong cock. The cock at the by-pass was found turned after the explosion. All was quiet until Boggs made the turn with a monkey wrench. Then a frying sound set up, which was immediately followed by the explosion. If it be true that the by-pass cock was already turned, and that Boggs turned only cock No. 1, admitting the gas to the meter, still the company would not be answerable for the explosion, unless it is responsible for the negligence of Boggs, because he had charge of the premises and of the turning on of the gas, and it was incumbent on him to see that all was right before turning it on. The case of Rylands v. Fletcher, L. R. 3 H. L., 330, is cited to the proposition that a party collecting or having any dangerous substance on his prem-

ises is responsible at all events if it escapes and injures another; but that case has been very much modified by the later English cases, and is generally disapproved in this country. In the subsequent case of Box v. Jubb, 4 Exch. Div. 76, the defendants had a reservoir, which they used in operating their mill. The reservoir overflowed, and damaged the lands of the plaintiff by reason of a flood of water coming down from a reservoir, the property of a third person, at a considerable distance from the defendants' reservoir. The defendants were held not responsible. This case and Nichols v. Marsland, L. R. 10 Exch., 255, lay down the rule that, if the person who has collected the water has done all that reasonable care and skill can do, he is not liable for damage by acts over which he has no control, and that distinction must be drawn between the keeping of a tiger or other dangerous wild beasts, which get loose accidentally or by the fault of others, and a reasonable use of property in a way beneficial to the community. In Losee v. Buchanan, 51 N. Y. 476, 10 Am. Rep. 623, a steam boiler exploded from a secret defect, the fault of the boiler maker. It was held that the owner, who had used due care, was not responsible to an adjoining proprietor, whose buildings were damaged by the explosion. See, also, Gas Co. v. Kaufman (20 R. 1069), 105 Ky., 131 (48 S. W. 434). In Flint v. Gaslight Co., 3 Allen, 343; Id., 9 Allen, 552, a gas-fitter, who was putting the pipes and fixtures in a house, turned on the gas before one of the pipes was closed with the proper fixture. By reason of this an explosion occurred. The gas fitter had been in the employment of the company, but had left it. It was the duty of the company to turn on the gas, and there were circumstances from which it might be inferred that it gave the gas fitter permission to turn the gas on when he got ready. It was held that from

this fact an agency to act for the company was not to be presumed, and that the defendant was not liable for the act of the gas fitter merely from the fact that it permitted him to turn the gas on. In Schmeer v. Gaslight Co., 147 N. Y., 529, 42 N. E. 202, 30 L. R. A. 653, the gas was turned on from the street when the piping in the upper hallways had not been properly attended to. The gas escaped, and caused an explosion. The gas in this case was turned in by a gas fitter, who had completed his contract on the lower floor, and did not know of the condition of the pipes above. It was held that there was no liability on the part of the company, unless it was itself negligent in the premises. The doctrine of these cases is approved in Brown v. Collins, 53 N. H. 442, 16 Am. Rep. 372; Blenkiron v. Gas Consumers Co., 2 Fost. & F. 437; 2 Shear. & R. Neg., sec. 728; 1 Thomp. Neg., secs. 706, 719; note to Fuel Co. v. Andrews (Ohio), 29 L. R. A., 337 (s. c. 35 N. E. 1059); Barrickman v. Oil Co. (W. Va.), 32 S. E. 327, 44 L. R. A. 92, and cases cited. The authorities lay down the rule, as gas is a useful article, almost indispensable in modern life under many circumstances, the manufacture and sale of it is not an illegal act; and that the company in supplying this necessity to its customers is bound only to exercise such care and skill in its management as the dangerous character of the substance and the attending circumstances demand of a person of ordinary prudence. The case of Thomas' Adm'r v. Gas Co. (21 R., 1690), 56 S. W., 153, was not intended to lay down any other rule. That case is rested upon the ground that those using such a death-dealing force as electricity must use the utmost care to avoid injury to those who are required to come near it. The injury in that case occurred on a city street, where for days a live wire had been permitted to hang, imperiling life. The safety of the travel-

ing public upon the streets demands that he who sends along the streets of a city such a deady thing as a strong current of electricity should not be acquitted of responsibility by a contract with an insolvent person to deliver the electricity to him at the factory. The case here, though, is entirely different. The gas was properly confined in the main. It did not get out of the main by any fault of the company. It escaped from the main by the fault of the customer, Boggs, in improperly turning it on. This was on his own premises; and, while the meter was the property of the company, it was in the possession of Boggs, and it was placed there for his use. He was not the agent of the company in turning it on. He turned it on for himself in the execution of his own purposes. The company was in no wise responsible for his acts, and while Boggs might be responsible to appellee, there is no reason for holding appellant liable. Bartlett v. Gaslight Co., 117 Mass. 533, 19 Am. Rep. 421.

The verdict is palpably against the evidence. The court should have peremptorily instructed the jury to find for the defendant at the conclusion of the testimony.