## Union Light, Heat & Power Company v. Lakeman.

(Decided November 21, 1913).

### Appeal from Kenton Circuit Court
### Criminal, Common Law & Equity Division).

1.  Electricity—Personal Injuries—Negligence—Evidence Admissible to Show Cause of Trouble.—Proof that on the next morning the servants of an electric light company on an inspection of the premises, discovered the cause of the trouble and remedied it by tying up a sagging wire, is admissible against it not to show negligence, but to show the cause of the trouble.

2.  Electricity—Electric Light Company Not An Insurer of its Wires —Highest Care Required.—An electric light company is not an insurer of its wires but is liable to a customer if it fails to use the highest care in maintaining its wires in proper condition.

3.  Electricity—Personal Injuries—Instructions.—The proof being undisputed as to how the injury occurred, and the cause of the injury, and it being evident on these facts that the company had not used proper care, an instruction telling the jury to find for the plaintiff unless the defendant had used proper care, is not prejudicial to the defendant.

ROBT. C. SIMMONS for appellant.

B. F. GRAZIANI for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

William Lakeman in December, 1911, was operating a blacksmith shop at the corner of Ferry and Main streets in Covington, Kentucky; the Union Light, Heat and Power Company furnished him with electric lights

from a wire carrying a voltage of 110 volts, which is not dangerous to one handling the wire. But the company also furnished electricity in running the street cars and lighting the streets and for this purpose, maintained wires carrying a voltage of 4,500 volts of electricity. One of its poles near the blacksmith shop had at the top of it a large transformer box, and the weight of this box caused the pole to lean to one side. The pole getting out of plum, caused the wires upon it to sag, and the sagging of the wires brought one of the high voltage wires in contact with one of the lower voltage wires which furnished Lakeman his light. Lakeman was shoeing a horse late in the afternoon, and needing the light, took hold of the bulb to move it where he needed the light. When he did this, the wire being heavily charged with electricity, he was severely shocked and thrown about fifteen feet falling on his face. He brought this suit to recover for his injuries, and on a trial of the case recovered $1,000. The company appeals.

The first complaint made on the appeal is that the court erred in the admission of evidence. The court allowed the plaintiff to show that the next morning after his injury, he called up the company and told them of the trouble; that it sent two of its men down to the shop who, after examining the shop, went to the pole referred to, and one of them, after going up the pole, called for a rope with which he tied up the sagging wire, so as to take it off of the lower voltage wire; that when he had done this, the trouble was removed and that the insulation on the wires had been burned off at the point of contact. It is insisted that the evidence was incompetent and should not have been admitted. But the purpose of the evidence was not to show subsequent repairs for the purpose of establishing negligence on the part of the defendant; it was admitted for the purpose of showing the cause of the trouble. Electricity is a subtle agency, and the cause of the trouble was not known to the plaintiff, until the agents of the company discovered the sagging wire and the destroyed insulation. The rule is well settled that changes, repairs or precautions after an injury are not admissible to show negligence or as amounting to an admission of negligence. But one well settled exception to the rule is that such evidence is admissible to show that the condition complained of caused the injury. (29 Cyc., 616.) Without this evidence there would be nothing in the case to show the cause of the trouble. The plaintiff was properly allowed to show not only that

he was injured but the cause of his injury, and this evidence simply showed the cause of the trouble; for there was no further trouble after the sagging wire was tied up in proper position. If the witness had simply stated that he discovered the cause of the trouble the next morning, and that the trouble was removed when the sagging wire was tied up with a rope, without telling who tied it up, the effect would have been the same.

It is also insisted that the court erred in giving the jury this instruction:

"You will find a verdict for the plaintiff unless you believe from the evidence that plaintiff placed a wire in the fuse or cut out box, to which the light wires in the premises were attached, in the position ordinarily occupied by the fuse wire described in the proof, and that by reason thereof a heavy current was carried into the wire which plaintiff grasped, and that plaintiff was thereby injured; or unless you believe from the evidence that defendant company by the exercise of the utmost care and skill in the management and care of its wires, appliances and electrical current, could not have prevented the entry into the wiring which plaintiff seized of an electrical current so dangerous as to injure plaintiff, then and in either of said events you will find a verdict for the defendant."

In Mangan's Admr. v. Louisville Electric Light Co., 122 Ky., 483, which was a case like this, we said:

"It is insisted for the appellant that the court should have instructed the jury that the defendant was bound to maintain perfect insulation and was responsible at all events if it failed to do so. Such a rule was in substance announced in Rylands v. Fletcher, 3 H. L., 330, but that case has not been followed in the later cases in England or America, the modern rule being that the manufacture and sale of a useful article being a legal act, the manufacturer, in supplying it to his customers, is bound only to exercise such care and skill as the dangerous character of the thing and the attending circumstances demand. (Triple State Natural Gas and Oil Co. v. Wellman, 114 Ky., 79, 24 Ky. Law Rep., 851, 70 S. W., 49.) Electricity is a powerful and deadly agency. It cannot be seen and is as silent as it is deadly. It gives no warning of its presence. So the rule has been adopted that those who manufacture and use it must exercise the utmost care to protect others from the danger. They are not insurers, for the manufacture and sale of electricity is lawful, but in handling so dangerous an agency,

care proportionate to the danger, must be observed, and to this end nothing short of the utmost care is sufficient. While in some of the cases referred to expressions are used in argument which might seem to apply the rule laid down in Rylands v. Fletcher, still, in all the cases, when the court came to its conclusion, it stated the rule as above quoted. Where the injury occurs to a traveler on a public highway or to a person in a public place where the public have a right to be, the burden is shifted. The rule in such cases is thus stated in Owensboro v. Knox's Admr., 116 Ky., 451, 25 Ky. Law Rep., 680, 76 S. W., 191: "When the circumstances of the injury show that a 'live wire'—one charged with a deadly current of electricity—has been allowed to be at a place where the public have a right to be and are, without reason to suspect the dangerous condition of the wire, a prima facie case of negligence will have been established. In such a state of case the risk of assuming that the wires and other appliances are in a safe condition is not that of the public, but of the operator of the plant. The operator has the better means of knowing. It is his duty both to provide such appliances as are reasonably safe, and by proper inspection and oversight to keep himself informed as to whether they are safe. Until the public has knowledge or notice to the contrary, they may assume that the operator has properly discharged his duties in these respects." The case of Lexington Railway Co. v. Fain's Admr., 71 S. W., 628, 24 Ky. Law Rep., 1443, was of this character. But the case at bar involves an injury occurring to a workman in the railroad shops and is governed by the general rule."

It is insisted for the appellant that the circuit court in instructing the jury did not follow the rule above laid down; but placed the burden of proof upon the defendant to show that it had exercised proper care. This is true; but the question remains, was this prejudicial to the defendant under the facts of this case? There was no conflict between the evidence for the plaintiff and that for the defendant as to the cause of the trouble. The defendant's witnesses introduced on its behalf on the trial testified to the same facts as the plaintiff's witnesses. The testimony for both the parties showed that the pole leaned from the weight of the box; that this leaning of the pole caused the upper wire to sag until it came in contact with the lower wire; that this condition was not sudden but simply due to the gradual leaning of

the pole. The condition of things could have been discovered by a casual inspection, and the result that followed might reasonably have been anticipated for some weeks by any one who made such an inspection. The actual condition of things as shown by the proof, manifested that there had not been that care on the part of the Electric Light Company which should have been exercised in guarding against the danger necessarily resulting when the high voltage wire touched the low voltage wire. If the court had worded the instruction as indicated by counsel it could not have had any influence upon the verdict; for the essential facts were all admitted and it is manifest that upon these facts such care had not been exercised by the appellant as the law requires.

We have not in any subsequent opinion modified the rule laid down in the Mangan case. In Thomas v. City of Somerset, 30 R., 131, the only question before the court was whether a peremptory instruction to find for the defendant should have been given. The court in that opinion did not have in mind outlining the instructions which should be given on the trial of the case. In Bowling Green Gas Light Company v. Dean, 142 Ky., 682, the Mangan case is cited and approved, and it is shown that the instructions there criticised were not prejudicial to the appellant.

There was sufficient evidence to submit to the jury the question whether the plaintiff had put a wire in the fuse box and thus destroyed its efficiency; but the evidence was conflicting on this subject, and on the whole case we find no substantial error to the prejudice of appellant. The amount of recovery is not excessive if the evidence for the plaintiff is true. Two juries have passed upon the case and have found substantially the same verdict.

The Judgment is affirmed.