## Louisville & Nashville Railroad Company v. Williams, By et al.

(Decided June 11, 1915.)

## Appeal from Knox Circuit Court.

1. Master and Servant.—Personal Injury From Becoming Overheated —When Master Not Liable For.—Where a servant, while performing night work with a fellow servant for the master, in loading cinders from a cinder pit on cars, was overcome by the extreme heat of the weather and thereby injured, and the evidence showed that the place of work, appliances for performing it, and the manner of its performance, were reasonably safe, and that the work was such as had always been done by two men and had, for three months, been performed by the injured servant and another, the master is not liable in damages for the injuries sustained by the former.

2. Master and Servant—Superior of Injured Servant—Particular Statement—Effect of.—The statement of the cinder pit foreman, made to the injured servant in reply to the latter's complaint that two men could not do the work in the cinder pit required of him and another: "If he could not keep it (the work) up he could go home," did not amount to a threat to discharge the servant if he failed to do the work required of him. In the light of the attending circumstances, the statement could have had no other meaning than that if the servant thought himself unequal to the work required of him it was his right to quit and go home.

3. Master and Servant—Assumed Risk—Servant Becoming Overheated While At Work—When Risk of Assumed By Servant.— Assumption of risk is a rule of the common law based on contract and, by implication, on the servant's act of voluntarily exposing himself to danger. The servant assumes the ordinary risks and hazards incident to the character of the work; and the danger of becoming overheated from atmospheric or weather conditions is but a risk incidental to any ordinary work in which the servant may engage. Therefore the master is not liable for an injury resulting to the servant from such cause. The servant is better able than anyone else to judge how much heat he can safely stand, how it affects him, and when his endurance reaches a point beyond which he ought not, for his own safety, to continue at work.

4. Master and Servant—Infancy of Servant—When Not Sufficient to Exempt Him From Application of the Doctrine of Assumed Risk. —Where it is made to appear from the evidence that a servant nineteen years of age, who became overheated, while at work, from atmospheric or weather conditions, was possessed of ordinary intelligence and capacity and had had as much as three months' experience in the work, it will be presumed that he knew the danger of becoming overheated in hot weather in the performance of such work, and to have assumed same as an ordinary risk incidental to its performance.

5. Master and Servant—Peremptory Instruction—When Refusal of Reversible Error.—Where it conclusively appears from the evidence, as a whole, that injuries sustained by a servant were not caused by the negligence of the master, but resulted solely from the excessive heat of the weather, constituting an ordinary risk or danger incident to the service in which the servant was employed and which he assumed in accepting such employment, the refusal of the trial court to give, at the conclusion of all the evidence, a peremptory instruction directing a verdict for the master, was reversible error.

BLACK, BLACK & OWENS and BENJAMIN D. WARFIELD for appellant.

J. B. WALL and SAWYER A. SMITH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, Byrd Williams, an infant nineteen years of age, suing by his next friend, recovered against the appellant, Louisville & Nashville Railroad Company, in the Knox Circuit Court, a verdict and judgment for .$1,500.00 by way of damages for personal injuries resulting, as alleged in the petition, from the negligence of appellant in permitting him to become overheated while at work for it in a cinder pit in the city of Corbin, this State, June 4, 1913. Appellant complains of the judgment and by this appeal seeks its reversal.

The answer of the defendant traversed the averments of the petition; pleaded that the injuries sustained by appellee incidentally resulted from his assumption of an ordinary risk of the work at which he was engaged and of which he had full knowledge; and that he was guilty of contributory negligence, but for which he would not have been injured. The affirmative pleas of the answer were controverted by reply.

The appellant has its terminals of three divisions of its railroad system at Corbin, and it there maintains as an appurtenant to its terminals a cinder pit, into which cinders and ashes from the pans of its engines are emptied. The cinder pit is 80 to 100 feet in length, 40 to 50 feet in width, and contains concrete sides four or five feet in height. The engines are run upon a track extending out over the pit, and while thus situated men called "knockers" empty the ashpans, remove the clinkers and start new fires in the engines preparatory to their going out upon one of the divisions of appellant's

railroad. The cinders and clinkers that are removed from the engines fall into the cinder pit underneath and alongside the track and are removed from the cinder pit by employes of appellant known as "shovelers," who, with shovels, load them into cars. But before the shovelers begin the work of loading the cinders and ashes into the cars they cool them by throwing water upon them in the pit with an ordinary hose.

At the time of receiving his injuries appellee was a night shoveler at the cinder pit, and while engaged in loading cinders into a car on a warm sultry night, June 4, 1913, was overcome by heat, which, according to the evidence introduced in his behalf, caused him to become subject to "spells" at intervals, practically made him a confirmed invalid and permanently impaired his ability to earn money.

It is insisted for appellant that the judgment should be reversed for error committed by the trial court: (1) In admitting incompetent evidence; (2) in failing to properly instruct the jury; (3) in failing to give a peremptory instruction directing a verdict for the appellant; which instruction was asked by it following the introduction of appellee's evidence and again at the conclusion of all the evidence. The third contention will be considered first.

By his own admission appellee had worked for appellant as a shoveler at the cinder pit at intervals, beginning six mouths before he was injured, and had served in that capacity fully three months altogether; and it is apparent from his further admission, as well as other evidence in the case, that he was an experienced shoveler, and had, with one other shoveler, kept the pit clear of cinders during the three months of his work for appellant. According to all the evidence, while there were times when as many as twenty or twenty-five engine ashpans were emptied in the cinder pit in a single night, oftener the number was less; and there were frequent periods throughout the night when the shovelers had nothing to do, during which they rested or employed their time as they chose; furthermore, that there had never been a time when more than two shovelers were required, day or night, to perform the work of removing cinders from the pit. There was no contrariety of evidence as to the fact that the two shovelers were not required to have all the cinders that were dumped into

the pit on any night loaded on the cars when they quit work at six o'clock in the morning. They were only required to load what they could during .the night, leaving the remainder to be loaded by the day shovelers, just as the day shovelers would often leave for the night shovelers to load, whatever cinders they were unable to remove from the pit during the day.

There was no evidence whatever conducing to prove that either the day or night shovelers were ever ordered to get any quantity of work done before quitting time, or within any other time. It is not claimed by appellee that he was, on the night in question, or at any time, hurried in his work or ordered to do a given quantity of work in a given time. He testified, however, that on the night of receiving his injuries he was told by appellant's yard foreman, Mitchell, "to get the cinders out," and that when he complained to Mitchell that two men could not do the work the latter replied: "If I could not keep it up I could go home."

It is argued by appellee's counsel that this statement of the foreman was equivalent to an order to appellee and his fellow shoveler that they were to get all the cinders in the pit loaded before they quit work at six o'clock the following morning. The foreman denied making the statement attributed to him, but, if made, did its language intend or manifest any such meaning as counsel attempts to give it? It certainly did not convey, as argued, an implied threat that appellee and his helper, or either of them, would be discharged if they did not get all the cinders out of the pit before quitting work the next morning. In view of the fact that the work at which appellee and his helper were engaged had always been done by two men, the reasonable inference would be that if the foreman made the statement attributed to him, his meaning was that if appellee could not do the work as he had previously done it, he could quit. Appellee makes no claim that the foreman expressed any opinion as to the ability or inability of himself and helper to do the work at the cinder pit, or that two men could do it without danger of either becoming overheated; or that the foreman made any promise to provide a third man to assist in the work. We can see nothing in the statement of the foreman that was calculated to force appellee to any greater effort in accomplishing his work, or to mislead him into incurring a risk or

danger that had not previously appertained to such work.

It is shown by the evidence that appellee and his fellow shoveler were allowed to pursue their own methods in the performance of their work. They cooled the cinders by throwing water on them in the pit and it was left to their judgment to determine when the cinders were sufficiently cooled to be loaded on the cars. The cooling of the cinders was required for two reasons: first, because it was necessary to enable the shovelers to safely handle them; second, to prevent them from igniting and burning the cars into which they were loaded.

Appellee admitted that when he began to work in the cinder pit he was instructed by appellant's yard foreman how to water the cinders; that neither art nor skill were required to perform that duty properly; that one in handling the hose could stand at a distance of thirty or forty feet from the pit and throw the water upon the cinders and thereby keep out of the fog and steam produced by the contact of the water with them; and, further, that any person of ordinary intelligence could tell when the cinders had been sufficiently cooled by the water to permit the loading of them on the cars. Appellee claimed, however, that he was never shown how to use the shovel in loading the cinders on the cars, but admitted that he knew how to do that work without instruction.

Appellee's evidence fails to show that his injuries were caused by the negligence of appellant. He was not entitled to recover upon the theory that appellant failed to furnish him a reasonably safe place to perform the work required of him as a servant, for the place of work was reasonably safe, as were the appliances with which the work was required to be performed. The only danger that could have attended the performance of the work was such as arose out of the extreme heat of the weather, or might have arisen from an attempt by appellee to load the cinders on the cars without properly cooling them. It is admitted by appellee that the heat of the weather was as well known to him as it was to appellant's foreman; and that such danger as might have arisen from an attempt to load the cinders on the cars without sufficiently cooling them, was one with which he was familiar, and which did not cause his injuries.

It is further evident that appellee was not entitled to recover on the ground that his injuries were caused by the negligence of appellant in imposing upon him and his fellow shoveler more work than the two, in view of the prevailing heat of the weather, could with reasonable safety perform; or that they were caused by any negligence on the part of its foreman in requiring appellee to do the work in a manner that rendered its performance dangerous to a person of his age and experience. As previously remarked, the work was such as had always, according to the evidence, been performed by two shovelers, regardless of the weather, and what had been safely done by appellee and one other shoveler for as much as three months of the time he was in the appellant's employ. There was nothing required in the manner of its performance on the night appellee received his injuries that differed in any way from its previous performance by him and his fellow shoveler, and though Mitchell, appellant's foreman, may have said to appellee, as the latter testified, if he could not keep up his work he could go home, the statement merely advised him that if he thought himself unequal to the work, it was his right to quit and go home. If the statement had contained a promise to make appellee's work lighter, or an assurance that the work was safe, a state of case would have been presented that is not now before us; but, judging from the words employed by the foreman, the statement could have had no other effect than to inform appellee that there would be no change in conditions; that the work would be continued by two shovelers, as previously at all times performed; and that it was left to him to decide whether he would go on with his part of it or quit the job.

If the unusually hot weather prevailing the night appellee was injured added a risk or danger he had not previously encountered in the performance of his work, the danger was admittedly known to him, as he experienced the heat before he was overcome by it, and was, in addition, together with other employes in and about the cinder pit, warned early in the night by the foreman, Mitchell, of the danger to be apprehended from the extreme heat. This warning was given in the form of an admonition to them that as the heat was unusual they should be careful not to get too hot or to drink too much of the ice water supplied for their use. It conclusively

appears from the admissions found in appellee's own testimony, and the testimony of numerous other witnesses, that his injuries were caused by the excessive heat of the weather and his own imprudence or negligence in drinking too great a quantity of ice water. According to the statements of the witnesses, the drinking dipper used by appellant's employes was a large one and held as much ice water as it was safe for a laboring man to drink at one time in hot weather; yet it appears from the testimony of appellee that he drank of the ice water three or four times that night before he became ill, and that his illness occurred within thirty minutes after the last drink. Other witnesses said he drank oftener than three or four times; and two of them, who saw him drink of the ice water a half hour before they heard of his illness, said that he then drank three full dippers of the water and started on a fourth.

The master is under no duty to prevent his servant from becoming overheated at his work, resulting from atmospheric or weather conditions, as they are matters entirely beyond his control. In such case, while the servant may not always certainly know how to keep himself within the limits of safety, he is better able to judge than anyone else how much heat he can safely stand, how it affects him, and when his endurance reaches a point beyond which he ought not, for his own safety, to continue at work. For these reasons it is for him and not the master to determine whether he shall engage in the work at all; or, if so, how energetically, and when he should rest or quit. If this were not true an employer could never afford to employ a laborer to do work at which there was any probability of his becoming overheated; and it is not to be overlooked that in operating furnaces, engines, and other heat-producing machinery or appliances, there is always more or less danger to the operatives of becoming overheated, and the same is likewise true of farming and other occupations which compel the laborer to be exposed to the heat of the sun.

It does not appear from appellee's own testimony that he worked any faster or harder than it suited him to work, or that when he found himself getting too warm he asked or was refused leave to rest. On the contrary, when he felt himself getting unduly warm he said nothing about it, but continued working and drinking large quantities of ice water. He alone was capable of know-

ing whether he was getting overheated and it was his duty to govern himself accordingly, and, if necessary for the preservation of his health, to stop work or even throw up the job.

There being in this case no defect in the place, appliances or material in, or with, which appellee worked, or danger in the manner in which he was required to perform the work, there can be no just complaint that there was a failure on the part of the appellant to use ordinary care to furnish him a reasonably safe place to work. The facts, therefore, authorized the application of the doctrine of assumed risk, for the injuries he sustained were such as resulted from no fault of appellant or its foreman, but from a cause or causes purely incidental to the risk he assumed by continuing the work. L. & N. R. Co. v. MacMillan, 142 Ky., 257; Dow Wire Wks. v. Moreman, 29 R., 854; Cumberland Tel. & Tel. Co. v. Graves' Adm'x., 31 R., 972; Mize v. L. & N. R. Co., 127 Ky., 496; B. F. Avery & Sons v. Lung, 32 R., 702; Fuller v. I. C. R. Co., 138 Ky., 42; L. & N. R. Co. v. Carter, 112 S. W., 904.

The assumption of risk is a rule of the common law and is based on contract and, by implication, on the servant's act in voluntarily exposing himself to danger. As said in Wilson v. Chess & Wymond Co., 117 Ky., 567, where a laborer was injured from falling into a vat of boiling water, because of ice around the vat where he had to stand in dipping staves into the boiling water:

"The duty of the master to furnish a safe, or reasonably safe, place in which the laborer may do his work, is frequently either misunderstood or misapplied. In the first place, the master is not required to furnish an absolutely safe place. If the work is in and of itself dangerous, the master does not insure against such danger. On the contrary, there is nothing better settled than that the servant assumes the ordinary risks and hazards incident to the character of his work. Whatever may be the moral obligation resting upon those who employ people in hazardous work to furnish them the safest possible means to protect them from injury, the law does not forbid a laborer undertaking a hazardous employment with full knowledge of its dangers, if he wants to. If he does, the law leaves the risk upon him, for he has assumed it. There is no feature of the law of negligence better settled than this. The

contrivance in use in this case was of the simplest kind. It was merely a large vat or tub, plainly open at the top. The lowest order of intelligence of a rational man would have comprehended that boiling water would scald flesh if it came in contact with it, and that ice was slippery. The conditions were openly visible to the laborer. He had only to use his eyes, and his most common experience, and his earliest instincts, to fully appreciate the danger of his position. There was no assurance by the master of the safety of the place, even if such assurance, under the circumstances, could have shifted the liability. There was no promise by the master to provide other appliances of greater safety—no promise to repair. Under these circumstances, the servant assumed the dangers of his employment. He cannot, therefore, recover from the employer damages growing out of them.''

It is, however, insisted for appellee that as he was only nineteen years of age the same care required of an adult in protecting himself against danger cannot be required of him. This view of the matter does not obtain in this jurisdiction. Appellee had at least three months' experience in performing the work at which he was engaged at the time of receiving his injuries. The work being of the simplest kind, it may well be said that this period of service ought to have furnished and did furnish appellee with all the experience necessary to give him a thorough understanding of such work and the risks attending its performance.

In C., N. O. & T. P. Ry. Co.'s Receiver v. Finnell's Admr., a boy seventeen years old was fatally injured while assisting a railroad brakeman, at the latter's request, in loading a piano on a train, and it was sought to hold the receiver of the railroad company liable for his death. There was a recovery in the circuit court. In reversing the judgment we, in part, said:

''Under the authorities there can be no recovery for the injury to the intestate, unless the fact that he was an infant takes this case out of the rule. He was seventeen years of age and well grown for his years. The danger from the fall of a piano was apparent, and there is nothing in the record to warrant the conclusion that he had not sufficient discretion to be held responsible for the consequences of his acts. The rule is that a minor in entering a service assumes, like the adult, the

risk of that service, unless too young to appreciate the peril to which he is exposed. 1 Shear. & R. Neg., Section 218.  * * * "

In Bollington v. L. & N. R. Co., 125 Ky., 186, we affirmed a judgment whereby a demurrer to the petition had been sustained and the petition dismissed. The facts were, that Bollington, who was nineteen years old, was set to making whitewash. While he was performing this work by pouring water upon the lime, an explosion occurred, which threw the lime and water in his eyes, causing the loss of the sight of one of them and material injury to the other. It was contended for the plaintiff that the defendant knew that lime and water, when confined in mixing, would explode; but that the plaintiff, being only nineteen years of age, and having little or no experience in handling or mixing lime and water, did not know it would explode, for which reason the defendant was guilty of negligence in failing to warn or instruct him as to the danger of the work; but we held that under the rule that a servant assumes all the risk ordinarily incident to his employment in accepting service, he not only assumes the risk reasonably to be anticipated as incident to it, but also assumes that he has capacity to understand and know the extent of such service and the requisite ability to perform it; and, further, that the use of water and lime in making whitewash, and the effect of water on lime when applied to it, are such commonplace and daily transactions, that any person of nineteen years of age who had ordinary intelligence and capacity, would, or ought to, know the danger attending such mixture; and such person, acting as a servant, connot recover of the master for an injury from a risk so assumed.

In L. & N. R. Co. v. Boone, 138 Ky., 700, it was held that a boy seventeen years of age, injured by the falling upon him of a heavy piece of iron in a shop while he was carrying bolts, was not entitled to recover damages for the injuries thereby sustained, because the danger was incident to the method of the work, and the risk one th . was assumed by him in entering defendant's employment. To the same effect are the following cases:  L. & N. R. Co. v. Bryant, 15 R., 181; Clifton v. C. & O. Ry. Co., 31 R., 431.

In the cases cited the doctrine of assumed risk was applied, notwithstanding the master's knowledge, or op-

portunities, by the use of ordinary care, of knowing of the existence of the conditions or danger out of which the injuries arose. Whereas, in the instant case the appellant did not know and could not, by the exercise of any sort of care, have known what amount of heat appellee could endure, or how much ice water he could drink without injury to his health. The latter alone could know or judge of these things.

As, according to the evidence, the appellee's injuries were not caused by the negligence of appellant or its foreman, Mitchell, but resulted solely from the excessive heat of the weather, constituting an ordinary risk or danger incident to the service in which he was employed, and which he assumed in accepting such employment, the trial court erred in refusing to give the peremptory instruction directing a verdict for appellant, as requested by it at the close of all the evidence. This being our conclusion, consideration of the instructions that were given by the trial court is deemed unnecessary, because none of them should have been given.

In considering appellant's complaint of the evidence we were able to find none that we regard incompetent, except that furnished by two or three witnesses to the effect that since appellee's injuries were sustained appellant employs three men to perform the work in the cinder pit that had theretofore been done by two. This testimony was not only incompetent, but also very prejudicial to the appellant. We have repeatedly held that evidence of the repair of a defect, or the making of a change in conditions, after the occurrence of an injury caused by such defect or the former conditions, is prejudicial error authorizing a reversal. L. & N. R. Co. v. Morton, 121 Ky., 398; L. & N. R. Co. v. Stewart's Admr., 131 Ky., 665.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.