## Kentucky & West Virginia Power Co. v. Stacy.

May 19, 1942.

326

Craft & Stanfill for appellant.

Olney B. Owen and S. M. Ward for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

In the year 1937, the Kentucky and West Virginia Power Company commenced drilling a well about 3½ feet from a three-story building which it used for its main offices in Hazard, Kentucky. A pocket of gas was encountered about 50 feet below the surface. After completion, the well was used to supply water to air conditioning equipment located in the basement of the building. About the last of December, 1939, or the first of January, 1940, some employees of the company detected an odor of sulphurous gas emanating from the well. They called this fact to the attention of the assistant manager who summoned Z. C. Daniels, general manager of the Hazard Gas Corporation, a public utility company, producing and distributing natural gas for heating and cooking purposes in Hazard and its vicinity. Mr. Daniels did not make an examination of the well but heard a bubbling sound, which he determined was caused by gas escaping through the water in the well. The odor from the gas was described by him to be of a "sulphurous nature". He advised the agent of the power company that in his opinion there was no immediate danger of the well pump being blown off or lifted from the well. At frequent intervals throughout the month preceding January 25, 1940, the cashier of the power company, whose desk was adjacent to the wall nearest the well, detected an odor which she described as resembling sulphur and train smoke. The substance which caused the odor hurt her eyes and caused her and others to have headaches and become ill.

On Monday, January 22, 1940, the cashier informed R. L. Gordon, manager of the power company of the presence of gas, whereupon, Mr. Gordon crawled on his hands and knees and by sense of smell, unsuccessfully attempted to locate the odor. On the following Thursday, which was January 25, 1940, some workmen were sent to the basement of the building to elevate a fan used in connection with the air conditioning system. The relocation of the fan was necessitated by lack of ventilation around the motor, causing it to become overheated to the point of endangering the bearings. Frigidity and heat were obtained in the air conditioning system by the use of a non-explosive gas known by the trade name of Freone. In order to conserve the Freone, which is rather expensive, the company caused frequent inspections to be made of the coils in which it was confined. In this work the inspector used an alcohol torch with an open

flame. Such an inspection was being made on the morning of January 25. At about 11:45 that morning a terrific explosion occurred either in the basement or the first floor of the building, which wrought great damage to the building, killed one person, and injured many, including the appellee, Colonel Stacy. At the time of the explosion appellee was attending a meeting of farmers on the third floor of the power company's building. The meeting had been called by the County Farm Agent for the transaction of business in which the power company had no interest or concern. Those in attendance were granted permission to use the building as an accommodation and at the specific request of the County Agent. No rent was paid for the use of the hall, and the company received no benefit whatever from the presence of appellee or any of the others attending the meeting.

This action was instituted by Mr. Stacy to recover damages for the injuries he received as a result of the explosion. Judgment was entered on a verdict in his favor in the sum of $1,250, from which the power company has appealed.

The first complaint is based on the theory that the court should have sustained the company's motion for a peremptory instruction, because the evidence introduced was speculative, conjectural, and unsatisfactory, and was not such as to fasten responsibility on the defendant. We cannot subscribe to that theory. It was established that for thirty days more or less, gas, natural or artificial, had been lurking about the premises under the control of the defendant and in and about which no other explosive was stored. That evidence together with the proof that an explosion occurred was sufficient to establish the fact that gas was the explosive which caused the damage. Whether the gas was natural or artificial, or whether it was admitted to the property through the negligence of the power company are questions that need not be determined because, as will hereinafter be pointed out, no liability could attach to the defendant in this case because of its failure to use care to prevent gas from getting into the premises originally, nor in its failure to discover its presence. The liability of defendant, if any there was, and which we shall presently see, hinged upon circumstances not connected with the original entry of the gas into the premises.

One visiting the premises of another may occupy

any of various relations to the possessor, depending on the use of his visitation at the time of the occurrence of the injuries complained of. He may be an insured, an invitee, a licensee, or a trespasser, and depending upon such relationship depends the duty owing the plaintiff by the possessor of the premises. It is conceded by plaintiff that he was not an insured, and it is conceded by defendant that the plaintiff was not a trespasser; therefore, it is necessary for us to determine whether the plaintiff, at the time of the accident, was an invitee or a licensee in order to determine the duty owed him by the defendant.

In American Law Institute's Restatement of the Law of Torts, Section 332, page 897, an invitee (therein called business visitor), is defined to be one who is invited or permitted to come upon the land of another for a purpose directly or indirectly connected with the business which the possessor conducts thereon, or for a purpose which is connected with the visitor's own business, which itself is directly or indirectly connected with any purpose, business or otherwise, for which the possessor uses the premises. In Section 331, page 896, of the same work, a licensee (therein called gratuitous licensee), is defined to be, in so far as a stranger to the possessor's household is concerned, one whose presence upon the premises is solely for the visitor's own purpose in which the possessor of the property has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom. In general, the distinction between the duties owing an invitee and those owing a mere gratuitous licensee is that the invitee is entitled to expect the possessor of the premises to take reasonable care to discover the actual condition of the premises and either make them safe or warn him of the dangerous condition, while the possessor of the premises does not owe to the gratuitous licensee the duty of exercising reasonable care to discover the condition of the premises. Baird v. Goldberg, 283 Ky. 558, 142 S. W. (2d) 120. He does, nevertheless, owe the licensee the duty of refraining from willfully or wantonly causing him injury or from committing active negligence resulting in his injury, and, if the harm caused to the gratuitous licensee is the result of a natural or artificial condition of the property, known to the possessor of the property and which he should realize involves an unreasonable risk to the licensee and

has reason to believe that the licensee will not discover the condition or realize the risk, the possessor owes the licensee the duty to make the condition reasonably safe or to warn him of the condition and the risk involved therein. American Law Institute's Restatement of the Law of Torts, page 932, Section 342. The higher duty owing the invitee attaches by reason of the fact that the visit is or may be financially beneficial to the possessor of the premises; but, since the possessor of the premises has no financial interest in the entry of the gratuitous licensee, the latter is entitled to expect nothing more than an honest disclosure of the dangers which are known to the possessor. Restatement of the Law of Torts, pages 938, 939, 940.

We come now to the consideration of the relationship existing between the plaintiff and defendant in this case. The room wherein plaintiff found himself at the time of the explosion was maintained by the defendant primarily for the use of its own organization, and the public in general did not have access to that part of the building, nor was it usually invited there for any purpose. The defendant upon request of the County Agent merely permitted it to be used by the group of farmers for purposes in which the defendant had no financial or other interest, and which purposes were solely in the interest of those attending the meeting or perhaps other land owners and farmers whom they represented. The defendant did not demand, nor did it receive or expect to receive, nor did those using the premises expect to pay, rent for the use of the building. Its use was granted as a mere courtesy. That being true, the plaintiff at the time of the accident occupied the premises as a gratuitous licensee and the defendant owed him no duty to discover the gas which exploded and caused the accident. However, evidence was introduced showing that almost daily for approximately one month previous to the accident, the presence of gas was detected in the building. This discovery was made by at least three of defendant's employees. The attention of the assistant manager was called to its presence 3 weeks before the happening of the accident and the attention of the manager was called to it 4 days prior thereto. That the presence of gas in an office building involves unreasonable risk to the occupants of the building is a matter of common knowledge, which must be imputed to the defendant. The manner in which the building was wrecked is strong evidence

that the gas in the building was confined to the basement and first floor. Plaintiff was occupying a room on the third floor for 30 or 40 minutes before the explosion occurred, and it is very doubtful that he could have discovered the presence of the gas on the first floor in the short time he was required to pass through that portion of the building. It is apparent therefore the evidence was sufficient to submit the case to the jury under the law applicable to gratuitous licensees.

But, because the instructions did not properly present the law of the case and the additional reason that the court erred in admitting incompetent evidence, the judgment must be reversed. Since the 5th instruction imposed upon the defendant the duty owing an invitee, it, as we have heretofore pointed out, was erroneous and, of course, prejudicial to the substantial rights of the defendant. The 6th instruction told the jury that they could not find for the plaintiff unless they believed from the evidence that the injuries occurred as a result of wanton, willful, or active negligence on the part of the defendant. While this instruction would be correct in many instances, it is not in this case because it fails to instruct on the duty owed an innocent licensee by the possessor of the premises with knowledge of a lurking but not apparent danger. The seventh instruction erroneously imposed on the defendant the duty of discovering the presence of the gas.

On the next trial in lieu of instructions 5, 6, and 7, the court will give the following instruction: "If the jury shall believe from the evidence that the explosion referred to in the evidence was caused by the ignition of gas which had accumulated in the building owned by the defendant, the Kentucky and West Virginia Power Company, in Hazard, Kentucky, and that the presence of such gas at such time and place was known to the defendant, its agents or employees, and was not known to the plaintiff, Colonel Stacy; and the defendant, or its agents or employees, permitted the plaintiff to enter or remain in said building without exercising ordinary care to rid the building of the presence of such gas, if any there was, or to warn the plaintiff of its presence, or the risk involved therein, if it was present, and that such gas exploded, and as a direct and proximate result of which, the plaintiff received the injuries complained of, then the law is for the plaintiff and you will

so find and fix his damages in accordance with the direction contained in instruction No. —; but unless you so believe, you will find for the defendant.''

Counsel for plaintiff in interrogating Mr. Gordon, the manager of the defendant company, over the objection of the defendant, propounded the following questions and received the following answers:

"Q. Just after that explosion did you put a pipe there up to the top of the building? A. Yes.

"Q. What was the purpose of that? A. It was put there so if there was gas in the well to bleed it off.''

While in certain circumstances evidence of changes in conditions or proof of repairs made after an injury are admissible for the purpose of showing the condition of the premises at the time the accident occurred, Louisville & N. R. Co. v. Woodward, 15 Ky. Law Rep. 445; Union Light, Heat & Power Co. v. Lakeman, 156 Ky. 33, 160 S. W. 723, it is never admissible in proof of negligence of the defendant in not having made the repairs or taken the precautions prior to the accident. Louisville & N. R. Co. v. Williams, 165 Ky. 386, 176 S. W. 1186, 1190, L. R. A. 1915E, 613; Louisville & N. R. Co. v. Morton, 121 Ky. 398, 89 S. W. 243, 244; Interstate Coal Co. v. Shelton, 152 Ky. 92, 153 S. W. 1; Louisville & N. R. Co. v. Stewart's Adm'r., 131 Ky. 665, 115 S. W. 775. When such evidence is admitted in proof of negligence it is highly prejudicial because it could be argued that the making of the repairs, or in this instance, the placing of the bleeder pipe in the well owned by the defendant, was an admission on the part of the defendant that gas from the well had found its way into the building, which fact is one to be determined by the jury from the evidence of the condition of the well and the premises where the explosion occurred before and at the time of the accident, and not by any act on the part of the defendant subsequent thereto. On the next trial the court will not permit any evidence to be introduced on repairs or changes in conditions wrought by the defendant, or any one else, after the happening of the accident.

Final complaint is made that the verdict of the jury is excessive, but, since the case must be reversed for the reasons hereinbefore set out, it is unnecessary for us to consider this question.

Wherefore the judgment is reversed for proceedings consistent with this opinion.