# Chesapeake & O. Ry. Co. v. Jenkins.

December 2, 1949.

As Modified on Denial of Rehearing March 10, 1950.

Ray L. Murphy, Judge.

LeWright Browning and Odis W. Bertelsman for appellant.

Benton, Benton & Luedke for appellee.

CLAY, COMMISSIONER—Reversing.

Walter Jenkins, an employee, died as a result of injuries suffered while working on a cut of freight cars in appellant's railroad yard. The jury awarded appellee, his administrator, $25,000 damages. The significant question on this appeal is whether or not the railroad company was entitled to a directed verdict.

Appellant operates a large switching yard in Campbell County. In making up trains it carries on an operation known as "humping." Cars to be switched are impelled over an elevation in the western sector of of the yard, uncoupled, and moved eastwardly by force of gravity down the lead track into the switch track for which they are intended. Emloyees known as "hump jockeys" ride these cars, and with the cooperation of switchmen manipulate them to their proper positions.

On the occasion of the accident, early in the morning, the deceased employee, Jenkins, was coupling air hoses between freight cars at the east end of track No. 6. He had been employed for a number of years as an air brake inspector and repairman, and apparently was performing his customary duties. The cut of cars on which he was working was known as a "double-over," the overflow part of a train being made up on track No. 2.

Other employees of appellant were engaged in an operation over the hump which was intended to switch two freight cars onto the west end of track No. 6, some distance away from the place Jenkins was working. A train of about 40 cars had been shoved over the hump when a coupling broke. Twenty-three cars immediately began a runaway movement down the lead track, and because the switch was open on the west end of track No. 6, according to plan, this cut moved onto that track. The hump jockeys were unable to control them, and they took what is termed a "wild ride." Not being stopped in time, they collided with the cars where Jenkins was working, and he was run over, receiving injuries which caused his death.

The deceased and his "partner" had earlier been engaged in coupling air hoses on the main train made up on track No. 2. For some unexplained reason Jenkins left track No. 2 and began working on track No. 6. This was done without the knowledge of his fellow employee or his foreman. The yardmaster, who was located at the hump, testified he did not know of it.

It is required and customary for employees such as Jenkins to obtain, directly or indirectly, authority from the yardmaster to work on a particular track. There is also a rule of the Company, known as the "blue

flag rule," which requires workmen whose duties make it necessary to be under or about a train to display a blue signal as a warning that it must not be coupled to or moved. No such signal was displayed by deceased or anyone else on track No. 6.

As a result of able briefing on both sides, appellee's theory of appellant's negligence has been clarified. This theory, as stated in appellee's brief, is that appellant's yardmaster: "wrongfully and negligently ordered the simultaneous switching of cars from the hump into the west end of Track 6 and the building of a double-over, necessarily involving the work and presence of men in and about cars, on east end of Track 6."

It will thus be seen that the breaking of the coupling and the handling of the 23 loose cars is not relied upon as the negligent cause of this accident. Appellee's claim is based on the proposition that the yardmaster knowingly created an unsafe place for the decedent to work.

Appellee has attempted to build his case on the fact that certain fellow employees had knowledge that Jenkins intended to, and was actually working on this track. Such was amply proved. It was further proved the deceased had been advised that the "double-over" was made up and ready to be worked. It does not appear, however, that the fellow employees who advised him this cut was complete or who knew he was going to work on track No. 6 *had any authority to direct his movements or were under any duty to advise the yardmaster.* The crucial question is whether or not there was other substantial evidence that the yardmaster knew, or should have known, that the decedent was working on track No. 6.

The yard conductor, who was making up the double-over on that track, saw Jenkins in a shanty at the east end of the yard before the accident. The latter was at the telephone, and it appeared he was telling someone that all of the cars for the double-over had been placed. The nature of the conductor's testimony is shown by the following excerpt:

"Q. Where was he the last time you saw him before he went down to work on these cars? A. I recall he was standing in the shanty door right ready to go to work on these cars.

"Q. You said there is a telephone in the shanty? A. Yes.

"Q. Did you say you thought he called somebody to tell them— A. I am pretty positive.

"Q. Explain how you base that. Did you hear him talk to somebody? A. I am sure I did.

"Q. What did he say to them? A. I think he said the cars were all in there now; all the cars for the double-over were in that track.

"Q. Whom was he talking to? A. I couldn't tell you for sure.

"Q. Is that all he said? A. I think that is all he said."

The testimony of the conductor is the only evidence the decedent had obtained authority to work on track No. 6 or had notified his partner of his intentions. It is here appellee is forced to rely on an inference that those intentions were brought home to the yardmaster. To find negligence on this proof, the jury would be required to speculate concerning the person with whom the decedent was talking. In view of the very specific denials by his partner and the yardmaster that they had a communication from this employee, the conversation is not of sufficient probative force to create an issue for the jury.

Appellee further urges that because the yardmaster had ordered the double-over made up on track No. 6, he must have known that employees would be working in or under the cars on that track. This argument must fail because the evidence establishes that the yardmaster's directions to make a double-over, which are given to others, do not authorize air brake repairmen to begin their work. They are so authorized only when this part of a train is completed and the yardmaster has given further instructions that such work may be done. There is no proof in this instance he was advised the double-over had been completed.

It is evident the yardmaster was in control of the operations in the yard at, and prior to, the time of the accident. Clearly employees must carry on their duties under his supervision and instructions. He could not be responsible for the safety of every employee in the yard

474

without knowledge of where they were performing their particular duties. On the proof of this case, we cannot find any evidence of substance that he knew, or should have known, it would endanger Jenkins to switch cars into the west end of track No. 6.

In the final analysis, even if the yardmaster had knowledge of Jenkins' position, his leaving the switch open at the west end of this track was not the cause of this accident. The intended switching operation created no hazard. The cause was the breaking of the coupling, which was not shown to be defective, and the runaway movement of the 23 cars, neither of which appellee relies upon as the negligence of appellant. Upon the proof presented, a directed verdict should have been given for appellant at the conclusion of all the evidence.

There is considerable proof in this record concerning changes in the Blue Flag Rule and other safety rules, and the taking of additional precautions after the accident. This evidence was clearly incompetent because it is an attempt to prove prior negligence by subsequent events. See Ashland Supply Company v. Webb, 206 Ky. 184, 266 S. W. 1086, and Kentucky and West Virginia Power Co. v. Stacy, 291 Ky. 325, 164 S. W. 2d 537, 170 A. L. R. 1. On another trial evidence of this nature should not be admitted.

A number of other questions raised on this appeal we do not consider it necessary to decide, and they are reserved.

For the reasons stated, the judgment is reversed for proceedings consistent herewith.