# Sohio Petroleum Co. v. Duke.

June 23, 1950

A. J. Bratcher, Judge

Byron, Sandidge & Holbrook, for appellant.

Otto C. Martin, for appellee.

Judge Knight—Reversing.

This suit was brought by appellee against appellant to recover damages in the sum of $2950 allegedly caused by appellant's negligence in permitting crude oil to escape from its pipe lines located on appellee's farm contaminating his stock-water causing sickness and death of appellee's cattle and destruction of the fertility of his soil as the result of said leakage. Appellant in its answer denied the allegations of the petition, pleaded contributory negligence and assumption of the risk by allowing his cattle to drink water containing any crude oil found on his farm. A reply made up the issues and on a trial before a jury appellee was awarded damages in the sum of $1000. Appellant prosecutes this appeal from the judgment based on that verdict urging reversal on three grounds: (1) that it was entitled to a directed verdict; (2) error in the ruling on the admission of certain evidence; (3) erroneous instructions.

Appellant and its predecessors in title have been lessees under an oil and gas lease on the lands of appellee and adjacent tracts in Ohio county for the past twenty years. Appellant is producing oil from about twenty wells located on the land leased from appellee. The crude oil is conducted from the wells on appellee's land and some other adjacent tracts to the storage tanks, also on appellee's land, by pipes laid under ground. Running through appellee's land from east to west is a slough which at times is dry with only occasional holes of water and in wet weather carries a large volume of water. Most of the wells are located north of this slough and the tanks are located south of it. The crude oil is carried from the wells to tanks through three 2 inch pipes which cross the slough at or near a plank walk which is used by pedestrians in crossing it. Appellee uses the surface of the land for cultivating crops and as pasture land and feed lots for his cattle. On field No. 1 situated south of the slough is located a barn designated in the record as barn No. 1, and in this field at the time complained of appellee had 26 head of cattle, and in field No. 2, also south of the slough, on which there is a barn, designated in the record as barn No. 2, he had 45 cattle. The cattle in both fields had access to and customarily drank from the slough and a branch which ran through both fields.

In the latter part of February 1946, appellee lost eleven head of cattle, all located in field No. 1, all dying within a period of one week from February 16-23, 1946. In barn No. 1, located in field No. 1, there was stored a quantity of soybeans in 100 pounds bags which had been harvested from appellee's land. Appellant contends these cattle died from eating soybeans while appellee contends they died from drinking crude oil which became mixed with their drinking water after it leaked from appellant's pipes.

The evidence is conflicting, that of appellee showing that the pipeline carrying the crude oil across the slough broke or sprang a leak some time in December 1945 when the water was low in the slough and later, when the water got high in late January or early February, water from this slough backed up into a ravine toward barn No. 1 and that the cattle were seen to drink water from this ravine which had on it a scum of crude oil. Appellant's proof is that this leak or break of December 27, 1945, was quickly repaired and that only about a barrel of oil escaped and this was washed away by the high water of January and February.

The evidence is conflicting as to the quantity of soybeans consumed by the cattle when they had access to the barn in which the soybeans were stored, on the night the door was blown open by the wind. Appellant's proof is that from twelve to fifteen bags were torn open and the beans scattered about with cow tracks among the scattered beans. Appellee's proof is that only five or six bags were broken open of the 24 bags stored in the barn and that after the scattered beans were gathered up, there were 22½ bags with a half bushel not picked up, leaving about 1½ bags that were, or might have been, consumed by the 26 cattle and 75 hogs that were in the field and had access to the barn.

The evidence is conflicting as to the condition of the cattle after they became sick and when they were examined after their death. Appellant's proof is that they were bloated and swollen; that when cut open after death their stomachs were found to contain soybeans and that their droppings contained soybeans. Appellee's proof is that soybeans were found in the stomach of only one of the cows that were opened and none in the rest; that the droppings contained no soybeans but did

show signs of oil. Appellant says this was castor oil given to cattle in treatment, and appellee, that it was crude oil which they had drunk. Also conflicting is the expert testimony produced by both sides as to whether or not cattle will drink crude oil, as to whether or not crude oil is toxic and as to its effect on livestock; also the effect on cattle of over-eating soybeans or other highly concentrated foods.

Also in conflict is the testimony of veterinarians and other experts, and that of laboratory technicians as to the stomach contents and condition of the stomachs and intestines, appellant's proof tending to show that there was no indication of crude oil from examination of the body tissues and stomach contents, and appellee's proof tending to show that conditions found did not result from consumption of soybeans.

Without detailing the conflicting evidence, but after careful consideration of it, the majority of the court is of the opinion that the evidence is sufficient to take the case to the jury whose province it is to weigh the evidence and pass on the factual issues involved. The lower court, therefore, did not err in refusing a directed verdict in favor of appellant.

One item of damages claimed in appellee's petition was $300 spent for extra feed, help in caring for sick cattle, and for medicine and veterinarians in the treatment of these cattle. There was little evidence to sustain this item. It was submitted to the jury but there is no indication that anything was allowed for it since the verdict was for a lump sum of $1000 and the items were not separated. There was ample proof that the value of the dead cattle was more than the $1000 allowed if there was liability for their death.

Another item of damages claimed in appellee's petition was $250 damages to the rental value of three acres of his bottom land for the past five years, being at the rate of $50 per year, allegedly caused by the negligence of appellant in allowing crude oil to escape and saturate the soil destroying its fertility. The court denied recovery on this item except as to $50 for the one crop year of 1946. Appellant complains of this because the court did not specify the year 1946 in his instruction. Appellant did not offer an instruction on this phase of

the case, and we think the one given by the court fairly covered the item of damage claimed as so limited by the court. However, for the reasons indicated in the treatment of the $300 item referred to immediately above, there is nothing to indicate that the jury included anything for this item in its general verdict.

In the trial of the case the lower court permitted appellee's witnesses to testify that appellant replaced the pipe lines over the slough after death of appellee's cattle. Evidence of this kind is not admissible as proof of negligence of defendant in not having made the repairs or taken precautions prior to the accident. Kentucky & West Virginia Power Co. v. Stacy, 291 Ky. 325, 164 S.W.2d 537, 170 A.L.R. 1, and cases therein cited. Its admission was prejudicial.

Proof was also admitted and pictures shown as to the condition of these pipes when they were taken up a little more than a year after the cattle had died, all over objection of appellant. This testimony was incompetent because the condition of these pipes at the time referred to was too far removed from the time of the damage complained of. The court later admonished the jury not to consider this evidence for that reason. On another trial of the case, this evidence should be excluded.

Appellant offered to introduce as evidence the testimony of an experienced cattle man who had had experience in feeding soybeans and as to the effects produced on cattle from over-eating beans. Objection was sustained to the introduction of this testimony and it was put in the record only on an avowal. We think this testimony was competent since the witness was not attempting to diagnose a disease but was testifying from his general experience in such matters, not as to the effect in a particular or isolated instance.

For the reasons herein indicated, the judgment is reversed for proceedings consistent with this opinion.