Danny Ray HARDIN, an infant of 11 years of age, By and Through his father, Lee Hardin, Appellant,

v.

W. L. HARRIS and Tom Woodward, Appellees.

Court of Appeals of Kentucky.

March 15, 1974.

Chester I. Bays, Bowling Green, James C. Milam, Russellville, for appellant.

Jesse L. Riley, Jr., Russellville, Richard W. Iler, Tarrant, Combs, Blackwell & Bullitt, Louisville, for appellees.

VANCE, Commissioner.

The appellant, Danny Ray Hardin, age nine years at the time of this accident, instituted this action to recover damages from appellees as a result of injuries sustained by him when a feed grinder was backed over or against him on a dairy farm owned by appellee, W. L. Harris and managed by appellee, Tom Woodward. Pursuant to a jury verdict in favor of appellees, a judgment was entered dismissing appellant's claim.

Danny Hardin was the son of a farmhand who was employed by appellees to assist in the operation of the dairy farm. On the day in question Danny and his brother, Freeman, age ten, accompanied their father to the dairy farm. They assisted the father in cleaning manure from the barn and in other work until 3:00 P. M. when milking commenced. The father then directed them to leave the barn for fear that they would disturb the cows during the milking operation.

The boys left the milkshed and rode on a tractor-drawn wagon operated by appellee, Woodward, to a distant field to haul cattle feed. There is a conflict in the evidence as to whether Woodward volunteered to take the boys with him or they simply got on the wagon as it was leaving. At any rate he knew they were on the wagon and did not ask them to get off or to leave the farm. Some two hours later Woodward and the boys returned to the barn where Woodward connected the tractor to a feed grinder and pulled it over to a silo to grind feed. The boys proceeded to the vicinity of the silo and watched the feed-grinding operation. After the feed was ground, Woodward pulled the grinder back to the barn—going past the entrance where the grinder was customarily stored—and then proceeded to back the grinder into the storage area. The two boys meanwhile had walked along behind the grinder as it was pulled from the silo to the storage shed. Danny entered the storage area to pick up some sacks from the floor. When he observed the grinder being backed into the storage shed toward him, he attempted to get out of the way and in doing so he slipped and fell. The grinder then backed over his leg causing the injuries complained of.

Woodward claims that the grinder was so large he could not see behind it and he did not know the boys followed him from the silo to the storage shed and did not see Danny behind him as he backed into the shed. He claims that in order to see Danny he would have been required to alight from the tractor and go around behind the grinder to ascertain if anyone was behind it.

As previously noted however, the tractor and grinder were first pulled to a point past the entrance to the storage shed and backed in a curving direction into the shed. As the tractor went past the shed entrance and for a time as it commenced backing Woodward could have had some view of the inside of the shed simply by looking to his left.

The appellant contends the instructions to the jury were erroneous and that improper argument of appellees' counsel resulted in prejudice to appellant.

Appellees deny error in the instructions or argument and contend that the judgment must be sustained even if there were such error because their motion for a directed verdict should have been sustained upon three separate grounds: (1) The appellant was a licensee and the only duties owed him were the duty not to expose him to wilful or wanton injury and the duty to exercise ordinary care to prevent injury after his peril was discovered; (2) the appellees were not negligent; (3) the appellant was contributorily negligent as a matter of law.

There is a question as to whether the infant appellant in this case was an invitee or a licensee. We do not reach the question for in either event appellees in conducting the activity in question owed to him a duty to exercise reasonable care for his safety.

 Historically visitors upon property have been placed in one of three categories, viz., trespassers, licensees or invitees. A trespasser is one who comes upon the land without any legal right to do so, a licensee is one who comes upon land with the consent of the possessor of the land and an invitee is generally defined as one who comes upon the land in some capacity connected with the business of the possessor.

 The liability of the possessor of land for injuries sustained by visitors upon the land depends in some degree upon whether the injury arises from a defect in the condition of the premises or from an activity conducted upon the premises. Though it has been said frequently that the possessor of land owes no duty to a licensee except to refrain from wilful or wanton injury and to warn of known defects this rule has been gradually eroded with respect to injuries caused by activities con-

ducted upon the premises. See Annotations 44 A.L.R. 777, 156 A.L.R. 1226 and 20 A.L.R.3d 1130. This erosion began in Kentucky with a distinction between active and passive negligence.

In Rabe v. Chesapeake & Ohio Railroad Co., 190 Ky. 255, 227 S.W. 166 (1921), we recognized the distinction between active and passive negligence in this language:

"There is quite a difference between the company's positive and affirmative acts in the operation of its trains and the mere passive or negative acts growing out of the failure to protect a licensee from defects on the premises. * * *."

In Sage's Adm'r v. Creech Coal Co., 194 Ky. 415, 240 S.W. 42 (1922), we said:

. "But whatever the merits of this controversy, it is unquestionably, true as the above cases show and reason dictates, that the owner owes a licensee a duty he does not owe a trespasser of anticipating his presence whenever he undertakes to revoke the license or interfere with its exercise, and that this duty forbids him to do any positive act to or on his premises that unduly increases the hazard and which he ought to anticipate may cause injury to his licensee, without giving him notice or taking reasonable precautions to prevent his injury from recently changed conditions.

"Whether you call the exposure of the licensee to such an unexpected and sudden peril active negligence, or willful or wanton negligence, is unimportant, for the two rules agree in holding the owner liable to the licensee for injuries thus inflicted; the only difference being that one calls it active negligence, while the other calls it willful or wanton negligence.

"The important question therefore is, not whether decedent was a licensee or a trespasser, although we think he was clearly a licensee under the alleged facts, but the character of the negligence alleged as the proximate cause of his inju-ry, since, unless under all the facts the act complained of amounted to willful or wanton negligence under the one view, or at least active as distinguished from passive negligence under the other, he did not state a cause of action."

In Louisville & Nashville Railway Co. v. Page, 203 Ky. 755, 263 S.W. 20 (1924), we said:

"It is well settled that a licensee or trespasser takes the premises as he finds them, and that the owner is only liable to him for injuries resulting from positive acts of negligence and not for injuries · resulting from defects in the premises. * * *."

The liability of a possessor of premises to a licensee for active negligence was reasserted in Kentucky & West Virginia Power Co. v. Stacy, 291 Ky. 325, 164 S.W.2d 537 (1942), when we said:

" * * * He does, nevertheless owe the licensee the duty of refraining from willfully or wantonly causing him injury or from committing active negligence resulting in his injury, * * *."

■ We are persuaded that the terms "active" and "passive" negligence are misnomers when applied to the standard of care owed to licensees. The terms have in fact been used to designate a distinction between injuries which resulted from defects in premises in which case the failure to discover and warn of the defects was denominated "passive negligence" and injuries which resulted from negligence in conducting a business activity upon the premises in which case the negligence was denominated "active negligence".

■ This case involves an injury to a person known to be upon the premises at a place made dangerous by activities being conducted upon the premises. In such a case whether the person injured was an invitee or a licensee should not have any bearing upon the standard of care required of the possessor of the premises. His duty

in either event was to conduct his activities with reasonable care for the safety of the appellant. This view is in accord with our decisions in Rabe v. Chesapeake & Ohio Railway Co., supra; Sage's Adm'r v. Creech Coal Co., supra; Louisville & Nashville Railway Co. v. Page, supra, and Kentucky & West Virginia Power Co. v. Stacy, supra. Cf. Gross v. Bloom, Ky., 411 S.W.2d 326 (1967). It also finds support in Prosser on Torts, Fourth Edition, Section 60, page 379 and in the Restatement, Torts, 2d, Section 341, Activities Dangerous to Licensees. The Restatement extends the duty of reasonable care to known trespassers. Section 336.

In any given case whether the conduct of the possessor of the premises constitutes reasonable care depends upon the circumstances of that case. In this case important factors to be considered are the facts that the visitor was known to be upon the premises at or near a place made dangerous by the activity and that the visitor was a nine-year-old infant.

■ Whether the appellees were negligent or the appellant contributorily negligent were questions for the jury under the circumstances of this case.

The instructions under which the issue of contributory negligence was submitted were erroneous and prejudicial. Instruction Number Two was as follows:

"Instruction Number Two.

"1. Although the jury may believe from the evidence the defendant Tom Woodward was guilty of negligence, still if they shall further believe from the evidence plaintiff, Danny Ray Hardin, failed to exercise that degree of care and caution which persons of his age, capacity and experience, may reasonably be expected to ordinarily use, in the same situation, and under like circumstances, and that but for his failure to use such care and caution, the injury to him would not have occurred, the plaintiff was guilty of contributory negli-

gence, and the law is for the defendants and jury should so find.

"2. The court instructs the jury, if they believe from the evidence that Danny Ray Hardin, infant plaintiff, was warned of the danger of playing upon the farm of Doctor W. L. Harris and was of sufficient intelligence to comprehend the danger incident to so doing, yet he persisted in playing upon said farm, the court instructs the jury that such action on his part amounts to contributory negligence, such as will bar his right of recovery."

No complaint is made as to the first section of Instruction Number Two but the second section required the jury to find for the defendant if they believed the infant appellant had been warned of the danger of playing upon the farm and was sufficiently intelligent to comprehend the danger of so doing. There was some testimony that the appellant had been asked to stay off the property but if any warning was given it was of a general nature and not of any specific danger. The evidence did not justify the instructions and even if the evidence on this point were sufficient the instructions would unduly emphasize it.

■ On the day of the accident, appellees knew that appellant was on the premises and did nothing to require him to leave. The mere presence of the infant appellant upon the premises cannot be said in itself to constitute contributory negligence on his part so as to preclude his recovery of damages.

■ This error in the instructions was prejudicial and necessitates a reversal of the judgment. In the event of a new trial the court should refrain from giving any instruction of the nature of Instruction Number Three in this case and the attorney for the appellees should refrain from any argument that a verdict for the plaintiff would make it unsafe for the jurors or anyone to own property or that liability

might attach without regard to how carefully one conducted the activity upon his property.

The judgment is reversed for further proceedings consistent with this opinion.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.