848 F.2d 190
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thelma M. GRAY, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 86-6251.
 United States Court of Appeals, Sixth Circuit.
 June 3, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this action under the Federal Tort Claims Act, plaintiff-appellant Thelma M. Gray appeals from the judgment entered for defendant-appellee, the United States of America. Upon consideration, we affirm the district court's judgment.
 
 I.
 
 2
 On August 25, 1982, appellant Thelma Gray, her husband, her brother, and her sister-in-law visited Mammoth Cave and selected the "Frozen Niagara" guided tour. That tour is about a quarter of a mile in length. As the group with which Gray was touring neared the end of the tour, they came upon a decline in the path. As she walked down the decline, Gray testified that she "[held] to the rail lightly." She also testified that she was not told that the surface of the decline was wet, nor were there any signs warning her either of the decline or of its possible wetness. Gray testified that her husband was walking behind her and that as she negotiated the decline, she slipped and fell. She suffered injuries which included a broken elbow. After she had fallen one of the tour guides allegedly said, in substance, "We have been trying to get this fixed. Now maybe they will do something about it."
 
 
 3
 At the time of her accident, Gray had cataracts and was wearing bifocal glasses. Gray described the area in which she fell as "slimy and slick" and although she was uncertain as to the area's lighting, she recalled that it was somewhat dim. Although Gray's husband's testimony contradicted his wife's testimony about the area in which she fell (he described it as neither slippery and slimy nor wet), Mr. Gray did substantiate his wife's testimony that the guide said that he had reported the condition of the pathway to park officials.
 
 
 4
 On the issue of the condition of the cave and its safety, Gray introduced the deposition of Billy J. Hall, the tour guide to whom the Grays attribute the remarks about the condition of the pathway. In relevant part his comments were as follows:
 
 
 5
 Q. Were there any special instructions that you all had with regard to safety factors within the cave?
 
 
 6
 A. Yes.
 
 
 7
 Q. Can you generally describe what those were?
 
 
 8
 A. We are instructed to give safety messages, to give safety instructions for the tour groups going in. This would involve instructions that people are not to smoke in the cave; it would involve staying on the trails of the cave; it involves children staying with their parents in the cave; it involves information given to the people that there are low hanging rocks, that they'll have to bend over, that they are to watch their heads; and also it involves warning people that there are slippery spots in the cave.
 
 
 9
 J.App. at 11. (Emphasis added). Gray also introduced the testimony of Sammie F. Lee, a professional engineer whom the district court found to be very well qualified. Lee testified that he had examined the area where Gray fell, measured its decline, determined that a decline of that degree (8? or 14%) was unsafe and concluded that steps or landings should have been provided.
 
 
 10
 Lee agreed with other testimony establishing that caves are uniformly and constantly moist, that humidity was high in a cave and that the humidity, which was established at 85%, was likely to produce dampness and wetness in the cave. He further concluded that warning signs should have been placed at the head of the decline. (There was, however, a sign posted outside the cave which warned that wet and slippery conditions could exist inside.)
 
 
 11
 Finally, Gray introduced the testimony of Dr. M.L. Stetten, the orthopedic surgeon who treated Gray for her injuries. Those injuries included a fracture to the right elbow and aggravation of pre-existing neck and back injuries. Dr. Stetten testified that the major portion of Gray's neck and back complaints were as the result of previous surgical procedures and that Gray would experience some future pain. He was not asked, however, whether she would be permanently disabled. Since there was no evidence of permanent disability, the district court determined that Gray's life expectancy was irrelevant.
 
 
 12
 Defendant United States of America introduced the testimony of Larry Compton who was employed at Mammoth Cave as maintenance supervisor. He testified that he visited the scene of Gray's injury on the day after her fall and found nothing unusual on the trail. He agreed that humidity is a constant 85% in the cave and that all trails have some moisture on them as a result of the humidity. He also testified that the area was lighted with 8 foot fluorescent tubes of 40 watts. Compton also examined the decline, finding it to be 26 feet long with a 8% grade. He agreed that from time to time a drying agent was applied to the surface of the decline.
 
 
 13
 The United States also introduced the testimony of James Carroll, the safety specialist at Mammoth Cave. His testimony was substantially the same as that given by Compton.
 
 
 14
 On October 18, 1982, pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. Sec. 2671 et seq., notice of Gray's claim for damage or injury was rendered to the United States. On April 27, 1983, the United States Department of the Interior denied the claim. On November 4, 1986, after a bench trial, the United States District Court for the Western District of Kentucky dismissed the complaint with prejudice. Gray then timely filed this appeal.
 
 II.
 
 15
 The issue on appeal is whether the district court erred by holding that the Government was not negligent under Kentucky law. This is a question of law over which our review is plenary, and we are guided by the Federal Tort Claims Act. Pursuant to it, the court must apply the law of the state in which the injury occurred. 28 U.S.C. Sec. 1346(b). See Raymer v. United States, 660 F.2d 1136 (6th Cir.1981).
 
 
 16
 Since Gray was injured in Kentucky, Kentucky law controls. Under Kentucky law, Gray was an invitee whose entry into the park was in furtherance of Mammoth Cave's business. Hardin v. Harris, 507 S.W.2d 172 (Ky.1974). Thus, Mammoth Cave had a duty to warn visitors of any artificial or natural condition not reasonably safe and not known to them. Hannin v. Driver, 394 S.W.2d 750 (Ky.1965); see also Sands v. Sears, Roebuck & Co., 438 F.2d 655 (6th Cir.1971) (the owner of a premises open to the public is not an ensurer of its customers' safety). As a multiple visitor to both Mammoth Cave and the Carlsbad Caverns, however, Gray knew or should have known that caves may have wet areas over which visitors must walk. If she had forgotten, the sign outside the cave should have reminded her of the dangers. In addition, as a member of the tour group, Gray received an oral warning about the precautions one should take when viewing caves and a written warning of the dangers was included in the description of the tour. To the extent that the warnings did not fulfill Mammoth's duties to Gray, the handrail along the trail did, since its presence is an implicit warning that care must be taken in negotiating the decline.
 
 
 17
 Also, as a multiple visitor to caves, Gray has witnessed the implementation of the objective of 16 U.S.C. Sec. 1: the preservation of national parks, like Mammoth Cave, in their natural state. Given this objective, the district court properly discounted expert testimony that the slope upon which Gray slipped should have been equipped with either a platform or steps. People expect caves to be as "untamed" as possible.
 
 
 18
 Based upon the foregoing reasons, we AFFIRM the judgment of the district court.