**Regis E. LINN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV. A. 96–149.

United States District Court,
E.D. Kentucky.

June 2, 1997.

Robert L. Templeton, Ashland, KY, for Plaintiff.

Dell M. Littrell, U.S. Atty.'s Office, Lexington, KY, for Defendant.

## ORDER

WILHOIT, District Judge.

This matter is before the Court on the Defendant's motion to dismiss or, in the alternative, for summary judgment [Record No. 3]. Upon review, the Court construes the motion as a motion for summary judgment. The matter having been fully briefed and the Court having been sufficiently advised, this matter is now ripe for decision.

## A. Facts:

The facts of this case are rather simple and undisputed. On February 6, 1994, Plaintiff was visiting a prisoner in the visiting room at the Federal Correctional Institution ("FCI") in Ashland, Kentucky, when a 6.5 ounce metal canopy covering the electrical components of a ceiling fan, came loose and struck him on the wrist. When the object struck him, Plaintiff lurched in his chair and strained his spine and shoulder. As a result, Plaintiff claims to have suffered permanent injuries to his wrist, upper arm, shoulder and spine which have left him unable to return to work as a self employed electrician. He blames his injuries on the United States' failure to use reasonable care in installing, inspecting and maintaining the fan.

The U.S. purchased the fan in question in late 1989. According to its instruction book, it is virtually maintenance free, once installed, with the exception of checking its oil level every five years. The accident in this case occurred six months before the recommended five year oil check. A visual inspection of the canopy showed that the single screw holding it on the fan had backed out of its hole. FCI's maintenance supervisor attributed this to 4½ years worth of the normal vibrations that most fans experience during rotation. Because the canopy was not damaged, the staff merely screwed it back on to the fan. A subsequent review of the fan's maintenance records did not produce any evidence that the fan had experienced any prior problems or required any prior maintenance or repair.

## B. Summary Judgment Standard:

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party, in this case the Plaintiff. Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the Plaintiff in an effort to determine if any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). As that Court stated, "the movant could challenge the opposing party to 'put up or shut up' on a critical issue ... [and] if the respondent did not 'put up', summary judgment [is] proper." *Id.* at 1478.

## C. Duty of Care:

For its motion, the Defendant raises two key issues. First, what duty did the United States, as the possessor and owner of FCI, owe to Plaintiff when he entered the premises. Secondly, did the United States breach that duty.

Because Plaintiff was engaging in a social visit with an inmate and not conducting any business with the Bureau of Prisons, itself, the United States contends that Plaintiff was a licensee. As a licensee, the United States would only have an obligation to warn Plaintiff of those dangerous conditions it was already aware of. Plaintiff, on the other hand, argues that he was a business invitee and, therefore, the United States had an obligation to inspect the visiting area for any latent defects. Because Kentucky has not yet addressed the issue of a prison visitor's status, this is a case of first impression for this Court.

Kentucky still adheres to the traditional duties associated with an injured party's status as a trespasser, licensee or invitee. *Perry v. Williamson*, Ky., 824 S.W.2d 869, 875 (1992). Though the distinction between invitees and licensees is often unclear, Kentucky generally defines an invitee as one who "enters upon the premises at the express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with business of the owner or occupant." *Scuddy Coal Co. v. Couch*, Ky., 274 S.W.2d 388, 390 (1955). A licensee, on the other hand, "enters by express invitation or implied acquiescence of the owner or occupant solely on the licensee's own business, pleasure or convenience." *Id.* The difference between the two is that a possessor has an affirmative duty to look for dangerous conditions to warn the invitee against while the possessor need only warn the licensee about dangers already known. *Mackey v. Allen*, 396 S.W.2d 55, 58 (1965).

In this case, the Court agrees with the Defendant that Plaintiff was a licensee while visiting another inmate at FCI. He was on the property only with the government's express consent and for the sole pleasure and benefit of himself and the inmate he was visiting. The government derived absolutely no benefit from this visit and the Plaintiff conducted no business with the government while he was there. Thus, Plaintiff's visit comports more closely with the definition of a licensee. As a licensee, the government would have no duty to warn Plaintiff of the fan's condition unless it was already aware of the problem prior to the incident.

Though the Court believes that Plaintiff was a licensee when he came to the prison for a social visit, it is not necessary to pigeon hole him into any particular category in order to decide this case since the label of licensee or invitee itself is not decisive. The labels merely raise assumptions under the circumstances as to what constituted reasonable conduct. *Perry v. Williamson*, Ky., 824 S.W.2d 869, 875 (1992). Regardless of the label attached, the bottom line is whether or not the United States exercised reasonable care under the circumstances. *Id.; Hardin v. Harris*, Ky., 507 S.W.2d 172 (1974). In determining whether the government's conduct was reasonable or negligent, the Court must consider the foreseeability and gravity of the potential harm as well as the degree of control the possessor exerts over the property. *Perry*, 824 S.W.2d at 875.

Even if this Court classified Plaintiff as an invitee, it would not change the end result. Under Kentucky law, the possessor's only duty to the invitee is to use ordinary care in making the premises reasonably safe and free from dangers of which the possessor knows or reasonably should know. *Edwards v. Johnson*, Ky.App., 306 S.W.2d 845, 848 (1957). This duty does not make the possessor an insurer of the invitee's safety. *Id; Scuddy*, 274 S.W.2d at 390. Thus, if the fan's dangerous condition was such that the United States, while exercising ordinary care, should not have reasonably known of the danger, then the United States cannot be held liable for the Plaintiff's injuries.

In the instant action, there is no question that the government had complete control over the premises and the fan in question. However, the installation manual indicated that the fan would not need any maintenance other than an oil check up every

five years. At the time of the accident, the first five year period had not yet expired. Prior to the accident, the fan had not given the Defendants any problems and had not required any repairs.

Furthermore, the evidence indicates that the accident was caused by one screw working loose in the fan. It is not known whether this occurred over night or over the course of months. In any event, there is no evidence that the fan did anything to put the Defendant on notice of a potential problem. In light of all of this evidence, the Court finds that the danger caused by one screw working loose in an appliance that otherwise gives every indication that it is operating problem free, is so latent of a defect that no person exercising ordinary care could be expected to discover it. In other words, this accident was completely unforeseeable so it would be entirely unreasonable to charge the Defendant with a duty to maintain inspections for such an obscure problem. Consequently, the Court finds that the Defendant cannot be charged with any breach of duty to the Plaintiff regardless of whether Plaintiff qualifies as an invitee or licensee.

Accordingly,

**IT IS THEREFORE ORDERED AND ADJUDGED:**

(1) that the Court construes Defendant's motion to dismiss or for summary judgment [Record No. 3] as a motion for summary judgment which is hereby **GRANTED;**

(2) that this action is hereby **DISMISSED** and **STRICKEN** from the docket; and

(3) that this is a **FINAL** and **APPEAL-ABLE** Order.