Stuart Dale CARNEY, Appellant

v.

Rusty GALT; and Julita Nord, Appellees

NO. 2014–CA–001124–MR

Court of Appeals of Kentucky.

JANUARY 27, 2017; 10:00 A.M.

MODIFIED: FEBRUARY 3, 2017; 10:00 A.M.

BRIEFS FOR APPELLANT: Stephen W. Long, Crestwood, Kentucky, Dan Rudloff, Bowling Green, Kentucky.

BRIEF FOR APPELLEE, RUSTY GALT: Michael S. Maloney, Blake V. Edwards, Louisville, Kentucky.

BRIEF FOR APPELLEE, JULITA NORD: A. Campbell Ewen, William P. Carrell II, Louisville, Kentucky.

BEFORE: ACREE, NICKELL, AND TAYLOR, JUDGES.

## OPINION

TAYLOR, JUDGE:

Stuart Dale Carney brings this appeal from a June 25, 2014, order of the Jefferson Circuit Court granting Rusty Galt and Julita Nord's respective motions for summary judgment as concerns Carney's premises liability and negligence claims arising from injuries sustained on June 9, 2012.[1] For the reasons stated, we affirm in part, reverse in part, and remand.

## BACKGROUND

The circuit court set out the relevant undisputed facts for this case in its order as follows:

This case involves injuries to the Plaintiff when he ran onto the Defendants' property on June 9, 2012[,] to retrieve a basketball. There are several facts which are undisputed in this case. The Plaintiff Carney resided at 12018 Rock Spring Drive in Jefferson County, Kentucky. Defendant Nord owned a single-family residence located at 12019 Rock Spring Drive. Defendant Nord leased this property, with an option to buy, to Defendant Galt. Defendant Galt tendered a video-taped interaction between he and Plaintiff which clearly established that the two neighbors are not on good terms. It is undisputed that Mr. Galt was constructing a fence on his leased property at the time of Plaintiff's injuries. Plaintiff stated in his deposition that he was aware that Defendant Galt was building a fence on his property. He further stated that he could see the fence being constructed from his home. By all accounts, Plaintiff Carney was playing basketball and drinking beer on the evening the incident occurred. The ball rolled into Defendant Galt's yard and Plaintiff chased after it. As Plaintiff Carney grabbed for the ball, he tripped on posts and 2x4's that were part of the fence construction and landed on a con-

---

1. Julita Nord is Trustee for 12019 Rock Spring Drive Land Trust which owns the real property where Stuart Dale Carney's injuries occurred. This property was being leased by the Trust to Rusty Galt at the time of the incident that resulted in Carney's injuries.

crete driveway. As a result of his fall, Plaintiff claims he sustained permanent injuries, permanent loss of bodily functions, medical bills and other expenses. (Citation omitted.)

One additional fact not referenced by the circuit court that we find relevant to our review is that at the time of the accident, Carney was a guest on property owned by Sherri Moore, which is located immediately next door to Galt's house on Rock Spring Drive. The basketball court that Carney was playing on at the time of the accident was located in Moore's driveway, which is adjacent to Galt's property where the fence was under construction. Additional facts relevant to our analysis will be set out in the discussion that follows.

## STANDARD OF REVIEW

The standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing Kentucky Rules of Civil Procedure 56.03). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). Consequently, summary judgment should be cautiously applied and is not a substitute for a trial. It is appropriate only when it appears, as a matter of law, that it would be impossible for the respondent to produce evidence at trial warranting a favorable judgment. *Id.*

## ANALYSIS

### A. Landlord Liability

■ The circuit court concluded that Julita Nord as landlord and owner of the residence being leased to Galt was not liable to Carney based upon the allegations set out in the amended complaint in this action. We agree. Upon leasing the property to Galt, and placing Galt in complete control of the premises, Nord's only duty as a landlord was to warn Galt of known latent defects at the time that Galt leased the premises. *See Carver v. Howard*, 280 S.W.2d 708 (Ky. 1955). It has been a long standing rule in Kentucky that a tenant takes the premises as he finds them. *Milby v. Mears*, 580 S.W.2d 724 (Ky. App. 1979). In this case, the fence was being constructed by Galt on Nord's property under his control pursuant to his lease with Nord. As a general proposition in Kentucky, a landlord is not liable for the negligence of his tenant in the use of a leased premises. *Farmer v. Modern Motors, Co.*, 235 Ky. 483, 31 S.W.2d 716 (1930). The Supreme Court has recently carved out one exception to this rule as concerns the dog-bite liability statute, Kentucky Revised Statutes (KRS) 258.235(4). *Benningfield v. Zinsmeister*, 367 S.W.3d 561 (Ky. 2012). That exception is not applicable to this case. We can find no authority in Kentucky jurisprudence that would create liability against Nord based upon the allegations set out in the amended complaint in this action. Accordingly we affirm the summary judgment granted by the circuit court in favor of Nord.

### B. Liability of Rusty Galt

■ The circuit court concluded that Carney was a trespasser on Galt's property to whom there was no duty of care owed, and that further the fence was an open and obvious condition that precluded liability even if there was a duty owed to Carney by Galt. We will review each of these findings in light of the established facts in this case and in conjunction with the status of premises liability law in Ken-

tucky, beginning with the open and obvious doctrine.

Prior to 2010 in Kentucky, the facts of this case would have easily fit into an open and obvious doctrine analysis that would have precluded any liability by Galt to Carney regardless of Carney's status when coming onto Galt's property. Under this doctrine, a land possessor could not be held liable to a visitor on his property, regardless of the visitor's status, who was injured by open and obvious dangers that were known to the visitor or otherwise so obvious that the visitor would be expected to discover them. *Rogers v. Prof'l Golfers Ass'n of Am.*, 28 S.W.3d 869 (Ky. App. 2000). The fence was clearly an open and obvious condition based upon the record in this case.

However, the Kentucky Supreme Court has recently modified (and perhaps abolished) the open and obvious doctrine beginning with *Kentucky River Med. Ctr. v. McIntosh*, 319 S.W.3d 385 (Ky. 2010) and its progeny.[2] In *McIntosh*, the Kentucky Supreme Court adopted the position of the *Restatement (Second) of Torts* with respect to open and obvious conditions. That position is stated as follows:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*Restatement (Second) of Torts* § 343A(1) (1965).

The Supreme Court further expounded upon its position in *McIntosh* in *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901 (Ky. 2013). In explaining the retreat from the open and obvious doctrine, the Court stated:

Traditionally, the open-and-obvious doctrine stated, "land possessors cannot be held liable to invitees who are injured by open and obvious dangers." As a result, if a plaintiff was injured by an open and obvious hazard, the landowner, regardless of any negligent conduct on its part, had a complete defense to any asserted liability. But, in *McIntosh*, we noted that a growing majority of states has moved "away from the traditional rule absolving, *ipso facto*, owners and occupiers of land from liability for injuries resulting from known or obvious conditions" and, instead, adopted the *Restatement (Second) of Torts's* approach to allow the jury to assess comparative fault.

Id. at 906 (citations omitted).

In *Shelton*, 413 S.W.3d 901, the Supreme Court went on to explain:

A target for criticism for well over fifty years, the open-and-obvious doctrine persists in our jurisprudence. In *McIntosh*, we took steps to ameliorate the harsh effect of the open-and-obvious doctrine for injured persons seeking recovery. We adopted the *Restatement (Second) of Torts* Section 343A and held that "lower courts should not merely label a danger as 'obvious' and then deny recovery. Rather [the courts] must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger." According to Section 343A, harm to the invitee is reasonably foreseeable despite the obviousness of the condition "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered, or

---

**2.** *See also*: *Dick's Sporting Goods, Inc., v. Webb*, 413 S.W.3d 891 (Ky. 2013); *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901 (Ky. 2013); and *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015).

fail to protect himself against it" and, also, "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Under this modern approach to cases dealing with open-and-obvious dangers, there is no duty for the land possessor to warn of the dangers; but this "does not mean there is no duty at all[.]" Indeed, "even where the condition is open and obvious, a landowner's duty to maintain property in a reasonably safe condition is not obviated[.]"

. . . .

[T]he existence of an open and obvious danger does not pertain to the existence of duty. Instead, Section 343A involves a factual determination relating to causation, fault, or breach but simply does not relate to duty.

*Id.* at 907 (citations omitted).

Additionally, in *Shelton*, the Supreme Court noted that it did not speak "clearly enough" in *McIntosh* and emphasized that an open and obvious danger did not pertain to the existence of a duty, and at the very least a land possessor's duty of care was not eliminated because of the obviousness of the danger. *Shelton*, 413 S.W.3d 901; *McIntosh*, 319 S.W.3d 385. The Supreme Court went on to explain in *Shelton* the land possessor's duty of care as follows:

First and foremost, a land possessor is subject to the general duty of reasonable care. "The concept of liability for negligence expresses a universal duty owed by all to all." And "every person owes a duty to every other person to exercise

ordinary care in his activities to prevent foreseeable injury." Of course, possessors of land are not required to ensure the safety of individuals invited onto their land; but possessors of land are required to maintain the premises in a reasonably safe condition.

*Shelton*, 413 S.W.3d at 908 (citations omitted).

Based upon the Supreme Court's modification of the open and obvious doctrine to conform to comparative fault principles, we do not believe, albeit reluctantly, that the doctrine precludes liability against Galt under the facts of this case, and thus we must look to Carney's status upon entering Galt's property in determining whether summary judgment was properly granted for Galt.

■■■ Kentucky classifies a visitor upon property as one of the following: trespasser, licensee, or invitee. *Scifres*, 916 S.W.2d 779. A person who comes upon the property of another without any legal right to do so is a trespasser. *Hardin v. Harris*, 507 S.W.2d 172 (Ky. 1974). A person who comes on the land of another with the possessor's consent is a licensee. *Id.* And, a person with business dealings with the possessor who comes upon the property is an invitee. *Id.*

As noted, the circuit court concluded that Carney was a trespasser upon Galt's property at the time of his injuries and thus could not recover damages from Galt, as a matter of law. KRS 381.232.[3] The court relied in part on a video that established that Carney and Galt were not on "good terms" at the time of the alleged trespass. However, the circuit court did not address what would appear to be most

---

**3.** Under Kentucky Revised Statutes (KRS) 381.231(2), the definition of an owner of real estate includes one who possesses any interest in the real estate or is a lawful occupant of the same. Galt would thus be protected against claims by trespassers under KRS 381.232.

relevant in this analysis—the relationship of Galt with his next door neighbor, Sherri Moore, and her guests, specifically as pertains to their ongoing relationship regarding access to Galt's property, given the proximity of the basketball court on Moore's property to Galt's property. In other words, was it customary for those who routinely used Moore's basketball court, including other neighbors, to have regular access to Galt's property to retrieve basketballs that left Moore's property during its use? The record clearly establishes that Galt had not posted "no trespassing" signs on his property to give notice that entry was prohibited on his property by all. Customary or routine access by guests of Sherri Moore to Galt's property could look to an implication of consent or acquiesce and otherwise create the status of licensee for those utilizing such access. *Bradford v. Clifton*, 379 S.W.2d 249 (Ky. 1964); *see also, Louisville Baseball Club v. Butler*, 289 Ky. 785, 160 S.W.2d 141 (1942).

■  Based upon our thorough review of the record on appeal, the status of Carney as a trespasser or licensee on Galt's property is clearly a disputed fact that must be determined by the trier of fact.[4] *Perry v. Williamson*, 824 S.W.2d 869 (Ky. 1992) (citing John S. Palmore, *Kentucky Instructions To Juries*, Civil § 24.09 (2d ed. 1989)).[5]

There being disputed facts regarding Carney's status on Galt's property, summary judgment was prematurely granted by the circuit court in favor of Galt. On remand, if the trier of fact determines Carney was a trespasser, then there would be no duty owed nor could any liability for damages accrue against Galt. KRS 381.232. However, if Carney's status is held to be that of licensee, then the trier of fact will be required to determine if Galt breached his duty of care to Carney to maintain his premises in a reasonably safe condition and to award damages, if any, under a comparative fault analysis.

## CONCLUSION

In conclusion, we affirm the circuit court's grant of summary judgment to Julita Nord as landlord of Galt; we reverse the summary judgment in favor of Galt and remand for proceedings consistent with this opinion. If the trier of fact concludes that Carney was a trespasser, there shall be no liability for Carney's damage claim against Galt in accordance with KRS 381.232. Otherwise, the case shall proceed as a traditional comparative fault tort case.

NICKELL, JUDGE, CONCURS.

ACREE, JUDGE, CONCURS AND WRITES SEPARATE OPINION.

ACREE, JUDGE, CONCURRING:

I am tempted to dissent with regard to the appellee, Galt, by quoting *Perry v. Williamson* for the principle that, at best, appellant Carney was a licensee and, "[i]f the hazard is obvious then it does not

---

4.  The distinction between a licensee and an invitee is often times shadowy and indistinct. *Scuddy Coal Co., Inc. v. Couch*, 274 S.W.2d 388 (Ky. 1954). However, as noted by the Supreme Court in *Shelton*, 413 S.W.3d 901 (quoting *Hardin v. Harris*, 507 S.W.2d 172, 175–76 (Ky. 1974)):

> In such a case whether the person injured was in invitee or a licensee should not have any bearing upon the standard of care re-

quired of the possessor of the premises. His duty in either event was to conduct his activities with reasonable care for the safety of the appellant.

*Shelton*, at 909, n. 28.

5.  The current version is now found in John S. Palmore and Donald P. Cetrulo, *Kentucky Instructions To Juries*, Civil § 24.12 (5th ed. 2014).

involve an unreasonable risk of harm to the licensee." 824 S.W.2d 869, 874 (Ky. 1992) (internal quotation marks omitted). But I am compelled to concur with the majority because, counterpoised to such clear jurisprudence, we have *McIntosh*[6] and its progeny.

Frankly, the Supreme Court already has tipped its hand. A majority of our justices read *Perry v. Williamson* as "abandoning status-based duties and replacing with simply the duty of reasonable care given the circumstances." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 909 fn.28 (Ky. 2013), *as corrected* (Nov. 25, 2013). Further, the Court is quite obviously ready to swap out our current three status categories (invitee/licensee/trespasser) for the *Restatement (Third) of Torts'* two status categories (entrant-flagrant trespasser). The Court stated in *Shelton* as follows:

> The abandonment of status-based distinctions for entrants to land—a concept which nearly half of the states have adopted in some form—would be consistent with the Restatement (Third) of Torts approach, which simply delineates between "flagrant trespassers" and "entrants." *See* Restatement (Third) of Torts: Phys. & Emot. Harm M § 51 cmt. a (2012) ("[W]ith the evolution of a general duty of reasonable care to avoid physical harm ...; the status-based duties for land possessors are not in harmony with modern tort law."). Although we do not adopt this approach today, mainly because this case is easily decided without crossing that threshold, we do find it important to note that this Court has previously expressed, at the very least, interest in ridding our case law of the often nebulous and inconsistent process of assigning a plaintiff a particular status. As the law stands cur-

rently, a landowner has a general duty to maintain the premises in a reasonably safe manner; and the scope of that duty is outlined according to the status of the plaintiff.

*Id.* Obviously, adopting this approach as this passage suggests, would not amount to abandoning status-based distinctions. We would simply be reducing the number of status categories from three to two. Whether this would bring much clarity is highly doubtful since the *Restatement* still "leaves to each jurisdiction employing the concept to determine the point along the spectrum of trespassory conduct at which a trespasser is a 'flagrant' rather than an ordinary trespasser [which equates to a mere entrant]." *Restatement (Third) of Torts* § 52 cmt a. Additionally, "[t]he critical aspect of this Section" is an aspect already present in our current three-status jurisprudence—"that a distinction is made, and different duties of care are owed depending on" the status of the person who entered upon the land. *Id.*

Notwithstanding my belief that it is ill-advised and unnecessary, the Supreme Court's clarion signal of its readiness to embrace § 51 and § 52 of *Restatement (Third)* is alone sufficient to justify my concurrence in the majority opinion.

However, I also write separately to voice concern that the recent series of open-and-obvious cases, and *Shelton* in particular, did more than merely erode the open-and-obvious doctrine. And, with all due respect to the Supreme Court, I cannot agree that what these cases have accomplished "is not a radical departure." *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015).

The holdings in *Shelton* wrest decision-making—that is, law-making and policy-making—responsibility away from the trial

---

**6.** *Kentucky River Med. Ctr. v. McIntosh*, 319 S.W.3d 385 (Ky. 2010).

judge and give it to the jury as fact determinations. Based on *McIntosh* and its progeny, the bar and bench have good reason to believe the Supreme Court has moved fully away from a relational concept of duty as Judge Cardozo expressed it in *Palsgraf*,[7] and as it has evolved in our jurisprudence,[8] in favor of a universal duty of care owed to society at large. This is one of the foundational concepts of the *Restatement (Third) of Torts*.[9]

Furthermore, *Shelton* has broader implications than mere rejection of the no-duty analysis of the open-and-obvious doctrine. It could well be argued that the Court's rejection of foreseeability as a factor in determining whether a duty exists, combined with acceptance of the universal duty of care, effectively eliminated the need for all no-duty determinations (that is to say all duty determinations) in Kentucky personal injury law.[10]

It is, of course, the prerogative of our Supreme Court to steer the course of our jurisprudence, even to veer from a trajectory formed firmly over a century. And that is what happened when the Court declared these changes.

It is not idle concern that Kentucky jurisprudence turned away from Judge Cardozo's relational philosophy of duty expressed in his majority opinion in *Palsgraf* as follows: "risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation." *Palsgraf*, 162 N.E. at 100 (quoted, in part, in *Pathways, Inc.*

---

7. *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). In *Palsgraf*, the *literal* concept "of a 'universal duty of care' was rejected ... and the 'relational negligence' theory was adopted instead." *Middleton v. Vill. of Nichols*, 114 Misc.2d 596, 599, 452 N.Y.S.2d 157, 160 (N.Y.Sup.1982).

8. Generally following this evolution, *see, e.g., Trainor's Adm'r v. Keller*, 257 Ky. 840, 79 S.W.2d 232, 234 (1935)("Negligence is the breach of a duty which one owes to another by reason of the relationship existing or the circumstances presented."); *Mann v. Kentucky & Indiana Terminal R.R. Co.*, 290 S.W.2d 820, 824 (Ky. 1955) ("[I]n the law of negligence generally, legal duty [exists] in respect to ... man's relation to other persons...."); *Edward F. Heimbrock Co., Inc. v. Marine Sales and Serv., Inc.*, 766 S.W.2d 70, 72 (Ky. App. 1989) ("the rule ... is the traditional approach of foreseeability as it relates to duty and proximate cause" (citing *Palsgraf*)); *Sheehan v. United Servs. Auto. Ass'n*, 913 S.W.2d 4, 6 (Ky. App. 1996) ("*Grayson Fraternal Order of Eagles[, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (Ky. 1987)] ... indicates that 'liability for negligence expresses a universal duty owed by all to all.' However, and this is a point frequently overlooked by some, the duty to exercise ordinary care is commensurate with the circumstances. *Id.* at 330. The statement of whether or not a duty exists is but a conclusion of whether a plaintiff's interests are entitled to legal protection against the defendant's conduct. *Id.*").

9. *See* John H. Marks *The Limit to Premises Liability for Harms Caused by "Known or Obvious" Dangers: Will It Trip and Fall over the Duty–Breach Framework Emerging in the Restatement (Third) of Torts?*, 38 Tex. Tech L. Rev. 1, 2 fn.5 (2005) ("The draft accepts Judge Andrews' proximate cause allocation of issues about unforeseeable plaintiffs. *See* Proposed Final Draft, *supra* note 3, § 29 cmt. n, illus. 9. It explains that Judge Cardozo's duty allocation improperly allows a judge to make 'amorphous evaluative judgments' about questions that turn on 'the specific facts of a case.' *Id.* § 29 cmt. f.").

10. This is what the *Restatement (Third) of Torts* calls for regarding personal injury torts. It says:

> "The rule stated in § 7 is that an actor ordinarily has a duty to exercise reasonable care. That is equivalent to saying that an actor is subject to liability for negligent conduct that causes physical harm. Thus, *in cases involving physical harm, courts ordinarily need not concern themselves with the existence or content of this ordinary duty. They may proceed directly to the elements of liability....*"

*Restatement (Third) of Torts: Phys. & Emot. Harm* § 6 cmt f (2010) (emphasis added).

*v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003)). In its place, the Supreme Court shifted to Judge Andrews' view, even quoting his dissent in *Palsgraf* that we all are duty bound to "protect *society* from unnecessary danger, not to protect A, B, or C alone." *Shelton*, 413 S.W.3d at 908 fn.26 (emphasis added; quoting *Palsgraf*, 162 N.E. at 102 (Andrews, J., dissenting)). If the Supreme Court has fully embraced Judge Andrews' view, as its signals to the bar and bench indicate, the first element of a negligence claim soon might be satisfied by an irrebuttable presumption that duty always exists, for that first element is a "universal duty owed by all [*i.e.*, each member of society] to all [*i.e.*, society in the abstract]." *Id.* at 908 (citation and quotation marks omitted). The trial judge's role of determining, as a matter of law, whether a duty exists could well be a vestige of the past, replaced by citation to the universal duty alone.

This first shift goes hand-in-hand with a second—removing "the reasonable-foreseeability analysis" from the judge and placing it "in the hands of the fact-finders, the jury." *Shelton*, 413 S.W.3d at 904. This second shift also serves to eliminate the need for the analytical skills of the trial judge whose responsibility, heretofore, was to determine the duty involved by considering "[t]he most important factor in determining whether a duty exists[,] foreseeability." *Pathways, Inc.*, 113 S.W.3d at 89 (citation and internal quotation marks omitted). Should we believe a duty analysis

is still necessary? At least some commentators simply do not; they have concluded that "the concept of duty itself is incoherent—even if not meaningless or a 'nullity'—if stripped of a foreseeability component."[11]

The Supreme Court considers our new jurisprudence part of a national trend "to modernize our tort law and eliminate unfair obstacles to the presentation of legitimate claims."[12] *Shelton*, 413 S.W.3d at 904. But is that correct? The fact is that there are "three main camps in the contest over the nature of duty in tort law."[13] And whatever trend our Supreme Court may see, the Indiana Supreme Court chose last year not to be a part of it. After acknowledging that "the concept of foreseeability as a component of duty is not universally embraced[,]" the Indiana justices were persuaded by a decision of the Supreme Court of Tennessee, noting that court's observation that "[w]hile there have certainly been able and skillful critiques of the role that foreseeability plays in determining whether a duty exists, the majority of courts continue to use foreseeability as a central component of their analyses." *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 389–90 (Ind. 2016) (citing *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 366 (Tenn. 2008) (citations omitted)). Both states "decline[d] to chart a different course" and maintain the view that "foreseeability plays a role in the analysis of duty."[14] *Id.* But, back to Kentucky.

---

11. Alani Golanski, *A New Look at Duty in Tort Law: Rehabilitating Foreseeability and Related Themes*, 75 Alb. L. Rev. 227 (2012) (quoting W. Jonathan Cardi, *Purging Foreseeability: The New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts*, 58 Vand. L. Rev. 739, 771 (2005)).

12. A majority of the Supreme Court in *Carter* also seem to believe "the benefits defendants have been receiving from having their duty

defined" by the trial judge have gone on long enough. *Carter*, 471 S.W.3d at 298.

13. Golanski, *supra* fn.5, at 229.

14. "When faced with the issue, thirty-three (of fifty-one) courts hold with fair consistency that whether the plaintiff was a foreseeable victim is a question to be decided in the duty context." W. Jonathan Cardi, *The Hidden Leg-*

*Shelton* suggests that, although "a court no longer makes a no-duty determination[,]" it will be able to apply legal principles to "make[ ] a no-breach determination, dismissing a claim ... when there is no negligence as a matter of law, the plaintiff having failed to show a breach of the applicable duty of care." *Shelton*, 413 S.W.3d at 904. According to the Supreme Court, for a premises liability defendant,[15] "liability can be limited, not because a duty does not exist but because there is no negligence—no breach—as a matter of law." *Id.* at 908. But how can it be that a judge makes this determination if we still hold that "[b]reach and injury, are questions of fact for the jury to decide." *Henson v. Klein*, 319 S.W.3d 413, 423 (Ky. 2010) (citation and quotation marks omitted). The fact is that the only time a trial judge may "make[ ] a no-breach determination" or may find "there is no negligence—no breach—as a matter of law[,]" is when the plaintiff totally fails to present enough evidence to create a genuine issue as to the material fact of breach, one of the elements of the negligence claim.

Considering *McIntosh* and its progeny as a whole, I simply cannot agree with the Supreme Court that these changes:

> ... should not be viewed as a major change in our law. The questions are not changing, their locations are. To say, as we have in the past, that a defendant had no duty, under particular circumstances, to foresee a particular harm is really no different from saying that the defendant's duty to take reasonable care was not breached, under those circum-

stances, by its failure to foresee the unforeseeable.

*Shelton*, 413 S.W.3d at 917 (internal quotation marks and citation omitted). Perhaps it is true that the questions are not changing; but it is most certainly true that who answers the questions has changed. That will have an effect on the evolution of our jurisprudence.

Determining whether a duty exists had always been the purview first of the trial court which, applying factors including foreseeability, made a legal or policy determination, *i.e.*, drew a line of demarcation between where the claimed liability is too attenuated and where it is not. Cumulatively, those trial court decisions were processed into Kentucky jurisprudence by our appellate courts whose role it is to harmonize them. If, in our "attempting to be faithful to precedent, [the appellate] courts, including this Court, have muddied the water and confused the issues[,]" *id.* at 910, then shame on us for not doing our job well enough. But the answer, it seems to me at least, is not for judges to stop making these determinations, allowing juries to do so in the name of comparative fault.

While my confidence in the jury system is unflagging, I fail to see the wisdom in abdicating the law-making and policy-making role of the courts to an ever-changing group of individuals, untrained in law or policy and unaware of the importance of and need for a predictable trajectory of jurisprudence.[16] I find it ironic that we complain about how the increased use of alternative dispute resolution deprives our courts of opportunities to develop our ju-

---

*acy of Palsgraf: Modern Duty Law in Microcosm*, 91 B.U.L. Rev. 1873 (2011).

**15.** If there is a rationale for limiting these analytical concepts to premises liability torts only, it escapes me.

**16.** However, the Supreme Court more recently said: "*Shelton* re-affirms that whether a duty exists is a purely legal decision that can be made by the [Supreme] Court as a matter of social policy." *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 303 (Ky. 2015).

risprudence, and yet we relinquish to lay jurors the responsibility of determining, on a case-by-case basis, what yesterday was law and policy, but having them do so without the guidance of precedent, without the guardian of *stare decisis*, and without the aspiration of predictability. I am confident that Kentucky lawyers and judges will not, to paraphrase the Supreme Court, "confuse a finding for the [plaintiff or] defendant on the facts of a particular case with a rule of law for all cases[.]" *Id.* at 912. Consequently, our jurisprudence will not evolve based on those jury decisions. Those decisions, decided as questions of fact, will be more difficult to assail on appeal, and that will mean less opportunity for the appellate courts to impact jurisprudence.

Furthermore, if the Supreme Court's attraction to the *Restatement (Third) of Torts* extends beyond § 51 and § 52, as *Shelton* indicates,[17] then we should warn

the bar and bench that its adoption will "reshape[ ] traditional negligence principles and parlance" and will utilize "risk and scope of liability terminology and concept[s that are] seemingly awkward compared to the traditional terms and expressions."[18] And we should alert them to the *Restatement (Third)*'s own weaknesses articulated by numerous and varied critics.[19] At the very least, we should warn them that the *Restatement (Third) of Torts* is "a fundamental reconfiguration of the duty, breach, and proximate cause elements of the negligence cause of action."[20]

Perhaps we should also be concerned that the further removed we are from pre-1984 tort law, the more we seem likely to misperceive as tainted every tort concept we then embraced. In fairness, we all generally look to the past as through a glass darkly, remembering what best suits our purpose. Justice Scott did that when he

17. See the Supreme Court's references to the *Restatement (Third) of Torts* at *Shelton*, 413 S.W.3d at 909 fn.28, 912 fn.43, 913 fn.44 & fn.45, 916 fn.56 & fn.58.

18. Tory A. Weigand *Duty, Causation and Palsgraf: Massachusetts and the Restatement (Third) of Torts*, 96 Mass. L. Rev. 55, 55 (2015).

19. *See, e.g.*, John C.P. Goldberg & Benjamin C. Zipursky, *Shielding Duty: How Attending to Assumption of Risk, Attractive Nuisance, and Other "Quaint" Doctrines Can Improve Decisionmaking in Negligence Cases*, 79 S. Cal. L. Rev. 329, 333 (2006) (The authors "strongly criticized the late Gary Schwartz for using his perch as Reporter of the 'general principles' component of the Restatement (Third) to impose California's brand of instrumentalism on the entire nation's negligence law."); John C.P. Goldberg & Benjamin C. Zipursky, *Intervening Wrongdoing in Tort: The Restatement (Third)'s Unfortunate Embrace of Negligent Enabling*, 44 Wake Forest L. Rev. 1211 (2009) (regarding remote tortfeasors, the Restatement (Third) is "a recommendation of how negligence law should treat such actors, not a description of how it does treat

them. The Reporters nonetheless defend their approach as a necessary prophylactic against judicial usurpation of the jury's province"); Mark A. Geistfeld, *Social Value As A Policy-Based Limitation of the Ordinary Duty to Exercise Reasonable Care*, 44 Wake Forest L. Rev. 899, 901 (2009) ("The Restatement (Third)'s treatment of duty has been sharply criticized"); Aaron D. Twerski *The Cleaver, the Violin, and the Scalpel: Duty and the Restatement (Third) of Torts*, 60 Hastings L.J. 1, 7 (2008) ("The Restatement's view that no-duty limitations should only apply to broad categories of cases and should not be utilized to negate liability in individual cases is simply wrong. Courts have repeatedly made duty determinations based on the particular facts of the cases before them. Indeed, it is hard to fathom how they could reach the no-duty conclusion without doing so."); Frank J. Vandall, *A Critique of the Restatement (Third), Apportionment As It Affects Joint and Several Liability*, 49 Emory L.J. 565 (2000) ("The ALI's massive reform of joint and several liability and apportionment is an extreme overreaction").

20. Marks, *supra* fn.4, at 2.

said the traditional era of Kentucky tort jurisprudence coincided with a period of the "greatest opportunity and economic growth this nation has ever known [and] the cause of this growth [was] personal responsibility[.]" *Shelton*, 413 S.W.3d at 920 (Scott, J., dissenting). We can all agree this is too general to be the whole truth.

But, with due respect, the *Shelton* majority misstated the interplay between personal responsibility and the law of contributory negligence. Those justices said "if the plaintiff was negligent *to any degree*, under a contributory-negligence standard, then the defendant could not be found liable." [21] *Carter*, 471 S.W.3d at 292 (emphasis in original). One need not read many contributory negligence cases to learn that this passage overstates the harshness of the jurisprudence of that time. *See, e.g., Green River Rural Elec. Co-op. Corp. v. Blandford*, 306 Ky. 125, 206 S.W.2d 475 (1947) (where the plaintiff recovered $15,790 from the electric company for his injuries after lifting in the air, from a well he was repairing, a wet thirty-foot pipe and accidentally touching it to an uninsulated power line).

But if the Court's mindset is that little, if any, tort jurisprudence from that era is viable today, then we are likely in for the rejection of other contributory negligence era concepts. The Supreme Court has already said "the rationale for the doctrine of superseding cause has been substantially diminished by the adoption of comparative negligence." *Commonwealth, Transp. Cabinet, Dept. of Highways v. Babbitt*, 172 S.W.3d 786, 793 (Ky. 2005).[22] The Court of Appeals addressed the issue in *Cadle v. Cornett*, 2010–CA–001063–MR, 2013 WL 3604642 (Ky. App. July 12, 2013), *not to be published*. In a split decision, this Court concluded that nothing in comparative fault doctrine prevented the trial judge from ruling the plaintiffs' recovery was foreclosed either by superseding cause or remote cause—two concepts developed during the contributory negligence era.[23] *Id.* at 9–10. The Supreme Court granted discretionary review in that case; however, the parties settled before the Court could rule. Although the Court of Appeals

---

**21.** The Supreme Court also said: "Because the law of contributory negligence placed the entire burden for his safety on the plaintiff himself, *all* the fault was assigned to the plaintiff." *Carter*, 471 S.W.3d at 292.

**22.** *But see Branham v. Rock*, 449 S.W.3d 741, 751 (Ky. 2014) ("court determines whether an intervening event is a superseding cause") (citing *Miller ex rel. Monticello Banking Co. v. Marymount Med. Ctr.*, 125 S.W.3d 274, 287 (Ky. 2004) (citing *House v. Kellerman*, 519 S.W.2d 380, 382 (Ky. 1974) ("The question of whether an undisputed act or circumstance was or was not a superseding cause is a legal issue for the court to resolve, and not a factual question for the jury."))). In *House*, Justice Palmore, writing for a unanimous high court, went even further and said: "As a matter of fact, there is much to be said for the proposition that basic causation itself should be treated as a question of law, the jury deciding only the issues of negligence." *House v. Kellerman*,

519 S.W.2d 380, 382 fn.2 (Ky. 1974). Modern tort law indicates the opposite trend.

**23.** The plaintiffs were struck from behind on I-64 by an eastbound semi, 1.34 miles away from the scene of an earlier accident in which one westbound vehicle entered the wide, grassy median and collided on the west-side abutment of an overhead bridge. That accident could not be seen from the eastbound lanes until the bridge was passed. The plaintiffs sued the driver involved in the otherwise unrelated first accident because that accident caused emergency vehicles to be dispatched, and that caused "rubber-necking" by people in vehicles traveling east, and that caused eastbound traffic to reduce their speed, and eventually caused vehicles 1.34 miles from the first accident (including the plaintiffs' vehicle) to stop, and that caused the semi, which did not stop, to collide with the rear of the plaintiffs' vehicle. Not quite the butterfly effect, but close. *Cadle v. Cornett*, pp. 1–2.

did not designate the opinion for publication, the Supreme Court ordered it depublished and removed its text from the WestlawNext digital research database.[24]

Each of these matters is an important one to consider and to be prepared for. All are worthy of more in-depth treatment than has been offered by judges, lawyers or scholars.

I have offered more than one reason for my concurrence in this case. I will offer another. Despite the Supreme Court's assurances that "summary judgment is still available to a landowner" in a premises liability case, *Shelton*, 413 S.W.3d at 916, we have not seen one affirmed by the Supreme Court since before

*Kentucky River Med. Ctr. v. McIntosh*, 319 S.W.3d 385 (Ky. 2010). This case offers that opportunity. My prediction is that a different opportunity will be seen here—the opportunity to expand liability under our jurisprudence by adopting more of *Restatement (Third) of Torts* and to declare, under § 52, that the appellant here was a mere entrant on the appellee's premises and not a flagrant trespasser.

24. Fortunately, the case can still be found on the Court of Appeals website.